(No. 19767)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOE ROTELLO *et al.* Plaintiffs in Error.

*Opinion filed April 17, 1930—Rehearing denied June 5, 1930.*

HEARD and SAMUELL, JJ., dissenting.

NORTH, LINSCOTT, GIBBONEY, NORTH & DIXON, GEORGE F. LIDDELL, and HALL & DUSHER, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, WILLIAM D. KNIGHT, State's Attorney, MERRILL F. WEHMHOFF, and ALFRED B. LOUISON, for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiffs in error, Joe Rotello and Sam Albimino, were convicted at the April term, 1929, of the circuit court of Winnebago county of the crime of rape, were sentenced to imprisonment in the penitentiary for the respective terms of two years and one year, and have sued out a writ of error.

The prosecuting witness, Nellie Scott, was a girl twenty years old who lived at Dixon with her mother. She was acquainted with Louise Welch, a girl a year younger, who had formerly lived in Dixon but had subsequently moved to Rockford. On February 16, 1929, Nellie came to Rockford to visit Louise at her home. She arrived about noon and the two spent the afternoon together, shopping and taking pictures. About 7:30 in the evening the plaintiffs in error came to the Welch apartment. They were acquainted with Louise but not with Nellie. They suggested going to a dance at the Ingleterra, a public dance hall, but the girls not wanting to go there declined and told the plaintiffs in error that they were going to the Odd Fellows dance. The plaintiffs in error left and said they would meet the girls at 10:00 o'clock at the Odd Fellows hall. The girls went to the dance about 9:00 o'clock and remained there until 12:00 o'clock. At the close of the dance they went down on the street, where they were met by the plaintiffs in error, one in an automobile and the other on the sidewalk. Upon their invitation the girls went with them to a cafe where there was dancing and remained there about an hour. On leaving the cafe at

12:30 Albimino said he had to meet a man at the garage by the paper-box factory, and they drove to the garage, Rotello driving, Nellie on the front seat with him, the other two in the back seat. They drove into the garage and shut the doors. Nellie jumped out and ran across the street. They all came after her, and she was induced to return and get in the back seat of the car with Rotello, Albimino promising to take them home. They started, but instead of going home Albimino drove out on the road toward Dixon. Nellie asked to be taken home, but they refused. They went out two or three miles and then turned off on another road, going about a mile along that road and then stopped. It is unnecessary to narrate the details of what occurred. Rotello in the back seat of the automobile with Nellie had sexual intercourse with her by the exercise of persuasion, threats and a certain degree of force and violence, over her protest and a certain degree of objection and resistance on her part. The degree of force which he used and the amount of resistance which she exerted are variously described by the four who were present. All testified to force and violence on his part and resistance on hers. Rotello claims she finally consented. It is enough to say that the evidence was contradictory, and there was sufficient evidence to sustain the verdict of guilty in the absence of error in the rulings of the court so prejudicial as to have deprived the defendants of a fair trial.

The name of Louise Welch was endorsed on the indictment as one of the witnesses who testified before the grand jury. Upon the request of the State's attorney the court called her as a witness over the objection of the plaintiffs in error, examined her and then permitted her to be cross-examined by the defendant's counsel and by the State's attorney. In requesting the court to call her the State's attorney stated he did not care to call her as a witness but would like to have her called as a court's witness, so she might be examined by the court and cross-examined by

either side, if desired; that according to the testimony she was there and had first-hand knowledge of a whole lot of it, and there were certain reasons why he did not care to vouch for her testimony but would like to have the court call her so she could be cross-examined by each side. The defendants' counsel objected to her being called as a court's witness, but the court overruled the objection and thereupon proceeded to question her. After his examination he told the State's attorney he might examine the witness. The counsel for the defense asked if the State was entitled to examine her first. The court said the defendants' counsel might examine her first if they wished to, and the counsel for the defense then proceeded to cross-examine her, after which the State's attorney cross-examined her, first as to the acts and conduct of all the parties from the time of their meeting on Saturday night at the Welch apartment until their return to the apartment at three o'clock Sunday morning, after the occurrence of the events which were the subject of the indictment, and later in her examination as to certain answers given by her to questions asked of her by the State's' attorney at an interview in his office a week after the alleged crime, which were inconsistent with her testimony at the trial.

The practice of the court's calling a witness at the request of the prosecution in the trial of a criminal case has been recognized, but it has been repeatedly announced that it ought not to be adopted except where it is shown that otherwise there may be a miscarriage of justice. (*People* v. *Cardinelli,* 297 Ill. 116; *People* v. *Dascola,* 322 id. 473; *People* v. *Johnson,* 333 id. 469.) The rule which should govern in such case was announced in *Carle* v. *People,* 200 Ill. 494, that where there is an eye-witness to the crime whose veracity or integrity the State's attorney may doubt, he is not obliged to call such witness but the court may call him and leave him to cross-examination by either side. This practice, the court said in a subsequent case, "should not be

extended beyond the limits of the rule announced in *Carle* v. *People, supra,* and when the circumstances justify a court in calling a witness the cross-examination should be limited to the issues involved and kept within proper bounds." (*People* v. *Cleminson,* 250 Ill. 135.) It is not proper for the court to call as a court's witness, at the request of the prosecution, a person who denies all knowledge of the commission of the crime, and then permit the State's attorney to ask the witness on cross-examination if he had not previously made statements contradictory of his testimony, thus laying the foundation for impeachment, and, after the witness' denial of making such statements, to impeach him by witnesses who testify to his making the statements, thus getting before the jury a prejudicial, unsworn statement, not subject to cross-examination by the defendant, pure hearsay. This was what occurred in the case of *People* v. *Johnson, supra.* No such situation is presented here. Louise Welch was present at the commission of the acts which were the basis of the charge in the indictment. She had knowledge, from personal observation, of what occurred at that time and she was a material witness in the case. She had made certain statements in writing to the State's attorney tending to show the guilt of the defendants, but the State's attorney stated to the court that he had reason not to wish to vouch for her testimony. It was proper for the court to call her and permit both the prosecution and the defense to cross-examine her. Her account of the affair varied somewhat from that of the defendants and also somewhat from that of the prosecuting witness, in some respects being favorable to the prosecution and in others to the defense. The State's attorney, on cross-examination, put impeaching questions to her. She stated that on the Saturday after the night of the alleged crime she was at the State's attorney's office in the court house and was asked some questions by the State's attorney which were taken down by Scone, the court reporter. The State's attorney then asked her about

a number of questions asked and answers given on that occasion, inquiring if the question (stating it) was asked of her and if she made the answer, (stating it,) and in each instance she admitted that such question was asked and such answer given by her. Her answers to many of these questions were contradictory of her testimony given in chief on the trial. It is insisted that it was improper to impeach the witness in this way,—that it was talk outside the presence of the defendants,—and on the ground that many subjects were referred to by the State's attorney in which the witness was first asked about the fact and the State's attorney then sought to impeach her by her statements made to him in his office out of court, and that the State's attorney then assumed as true not the testimony of the witness in court but the statements made to him out of court, and in that way got many facts, which the witness denied, which would undoubtedly confuse the jury as to what was the testimony and what part was only statements made in the prosecutor's office. In view of the testimony of the witness on the witness stand at the trial, compared with her previous statements to the State's attorney in his office a week after the occurrence, it is not surprising that he was unwilling to vouch for her credibility. Under the circumstances the court was justified in calling her as a court's witness. She was an eye-witness and her testimony was material. Under such circumstances, when the court calls a witness he is not the witness of either the prosecution or the defense, under the rule which requires the party producing the witness to vouch for his credibility and prevents him from impeaching his own witness. Either party is permitted to cross-examine upon the issues involved in the case, and there is no rule which prohibits his impeachment of the witness by showing that he has previously made statements at variance with his statements at the trial. The court did not err in calling Louise Welch as a witness or in permitting her impeachment by showing inconsistent statements made out of court.

In the examination of the prosecuting witness she was asked whether when she returned to the Welch home she told Mrs. Welch what had happened. This question was objected to as leading, suggestive and assuming, but the objection was overruled and the witness answered that "she told Mrs. Welch everything that happened, just the same as I told you." Thereupon the defendants' counsel objected because the answer referred back to other things and because it was a comparison and not a statement of fact what she told Mrs. Welch, and the objection was overruled again. The witness was asked what, if any, report she made to her mother upon her return home Sunday evening about 6:30 as to what had happened, which was objected to. The objection to the question was overruled and the witness answered, "I told my mother everything that happened." Mrs. Welch was a witness for the defense, and on her cross-examination she stated that the prosecuting witness told her what had happened, and she was then asked what had happened. This was objected to by the defendants on the ground that they did not go into that, but the court stated that the defendants went into the conversation and overruled the objection. The witness answered, "Well, she said she had been raped." The court asked the witness, "Did she say who had raped her?" The witness replied that she did and said it was Rotello. The prosecutor thereupon asked the question, "Joe Rotello?" and the answer was, "Yes, sir." Objection to the conversation was overruled. It is objected that this was a violation of the rule which permits, on the trial of an indictment for rape, evidence of the complaint of the woman assaulted, made immediately after the commission of the crime, but prohibits proof of any statement of the details of the offense or of the name of the person charged with committing the crime. The admission of the complaint of the victim of the crime under such circumstances is an exception to the general rule against hearsay testimony, and the evidence is admitted in corrob-

oration of the woman's testimony that the act was not committed with her consent. (*People* v. *Lewis,* 252 Ill. 281.) The testimony of the witness that she told Mrs. Welch and her mother everything that had occurred without rehearsing the details to the jury was not in violation of the rule. The statement that Joe Rotello was her assailant was a violation of the rule, but it did no harm to the defendants. (*People* v. *Weston,* 236 Ill. 104.) There was no question of identity in this case. If a rape was committed it was committed by Rotello. He says so himself. He admits that he was the person who had intercourse with the prosecuting witness. If that act constitutes rape he was guilty of the crime.

A bloody petticoat which the prosecutrix and her mother testified the prosecutrix wore on the night in question was offered in evidence. Louise Welch and her mother testified that it was not the petticoat the prosecutrix wore. The prosecuting witness testified that the blood on the petticoat was caused by the alleged rape, but the defense claimed that it was caused by her menstruation immediately afterward. The court withheld his decision on the objection to the admission of the petticoat in evidence, and during the concluding argument of the State's attorney it was admitted in evidence. There was a dispute in the testimony as to whether it was the garment worn by the prosecutrix at the time and as to the cause of the blood on it. Of itself it was of no value as evidence in the case. Whether the blood was from one cause or the other was of no importance in the case. The act of intercourse occurred. The question for the jury to determine was whether it was a forcible rape, and the blood added nothing of value to the evidence. The garment should not have been admitted, but the error in its admission, in considering the admitted facts, does not justify a reversal of the judgment.

Louise Welch testified that since the 15th of February, and before the grand jury met, she, with Mrs. Rotello (Joe's

mother) and her husband, Andrew, Joe's older brother, and Harry, Louise's older brother, went to Dixon together, leaving Rockford about 9:00 o'clock in the morning, arriving at Dixon about 10:30. They went to the home of Nellie Scott's mother, Mrs. Zimple, and saw her in the house, where they remained about fifteen or twenty minutes. The State's attorney then asked her what they were talking about, whether any money was offered to Mrs. Zimple, what was the purpose of the visit and if anyone asked Mrs. Zimple to have Nellie drop the case, to which questions objections were made. The State's attorney then said, "I desire to offer—" when he was interrupted by the defendants' attorney with an objection to any offer in the presence of the jury. The bill of exceptions says that the State's attorney then made a motion to attorney Hall and started to walk up before the court, and Hall remarked, outside the hearing of the jury, "We have nothing to argue with him." The court then said: "Well, when counsel asks you to come up to the court you must either do it or let him make his offer. Unless you care to come up the court doesn't know what he wants, but as you refuse to come with him counsel may make his statement of what he intends to offer unless you will come with him to let him make the statement." The defendants' attorney then remarked, "If he wants to make an offer I'll come up there," and the State's attorney said, "The purpose is to show that these five people at that time were there, and Mrs. Rotello offered to pay Mrs. Zimple money—two hundred dollars, to be exact." The court then held that it was incompetent and sustained the objection, and the defendants' attorney moved to withdraw the jury and continue the case because of the statement of the prosecutor in the presence of the jury. This does not show any improper ruling of the court or action of the State's attorney. The State's attorney started to make the offer, to which the defendants' attorney objected. Apparently the defendants' attorney did not see fit to accept the State's at-

torney's invitation to make the offer to the court privately. At any rate, the court so regarded it and stated that as counsel refused to come with the State's attorney the latter might make his statement of what he intended to offer. Thereupon the State's attorney made his offer and the court held it incompetent. The motion to withdraw the jury and continue the case was properly denied.

The plaintiffs in error complain of the closing argument of the State's attorney, which is set forth in the abstract in full, which they characterize as inflammatory and an appeal to racial prejudice. We have read the argument, and while it is denunciatory of the crime and of the defendants as criminals clearly proved guilty by the evidence, we do not regard the portions which were objected to and which have been called to our attention as transcending the bounds of allowable argument.

It is contended that there was no evidence against Albimino that he consented or assisted in any way in the perpetration of the offense. Rotello drove the car from the cafe to the garage. When the prosecutrix got out of the car and ran out on the street all followed her and persuaded her to return. Albimino drove the car then out into the country and refused to go back and take the young women home. He turned off the main road and stopped the car. When the prosecutrix begged him to take her home he did not do so but said he would do so when he got ready. The prosecutrix testified that she said to him, "Please help me," and he just shrugged his shoulders and said, "Let me alone." She called to Louise to help her and Louise grabbed hold of Joe's coat. Then Joe hit Louise and knocked or pushed her down on the front seat and Albimino hit her and told her to get out of the car. She said she did not want to get out, and he took hold of her arm and pulled her out. There was evidence from which the jury might well believe that the visit to the garage and the trip to the country, with what occurred there, were planned in advance by

the two plaintiffs in error, and that the evidence justified a verdict of guilty not only against Rotello but also against Albimino.

The judgment is affirmed. *Judgment affirmed.*

HEARD and SAMUELL, JJ., dissenting.