(No. 22091.—

The People of the State of Illinois, Defendant in Error, *vs.* Ernest Stockton, Plaintiff in Error.

*Opinion filed February 23, 1934.*

JULIUS REZNIK, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

By writ of error to the criminal court of Cook county the plaintiff in error, Ernest Stockton, seeks to reverse his conviction and sentence of five years for the rape of Margaret Banks, aged nineteen years.

Stockton and Miss Banks were employed in a restaurant in Chicago in March, 1933, he as a cook and she as a waitress. On March 29, on arriving for work about 7:15 in the morning, Miss Banks went to the kitchen and ascended a flight of steps to a small room termed the "vault," set off from a small mezzanine and used as a dressing room. Near the door of the vault she found Stockton sitting on a box, with his feet stretched across the entrance in such manner that she had to request him to move in order that she might pass. She then related the following happenings: After Stockton let her pass she went to her locker and was taking off her hat when he came over and placed his hands upon her. Despite her protests he continued his advances until she became fright-

ened and started to fight him. He finally got her into a corner and with violence bore her to the floor. She said she was out of breath from her struggles and stunned from the force of a blow on the back of her head. While stretched out on the floor in this condition she said he had intercourse with her. The act, according to her, took about seven minutes. The defendant went down-stairs after the act, leaving her in the vault. Another waitress found her sitting on a box right after the defendant came down the stairs. Miss Banks told her what had taken place and then went down-stairs to work. When she reached the restaurant floor she told another waitress, Josephine Walsh, what had taken place, and also made complaint to the manager of the restaurant. After quitting that night Miss Banks was driven home by the manager and then was taken to an unnamed woman, who accompanied her to a doctor a little after ten o'clock that night. This doctor testified that upon examination of Miss Banks he found bruises on the inside of her thighs, black-and-blue marks and bruises were found on her arms and a bump or contusion on the back of her head. The vaginal examination disclosed a fresh rupture of the hymen, accompanied with a little swelling and congestion of the vaginal mucous. The doctor could not say exactly how long the bruises had been present but did say that they were of approximately recent origin, inasmuch as signs of discoloration were still present and there was extravasation of blood into the tissues. The hymen, the doctor said, was ruptured recently—within ten or twelve hours previous to the examination. At the time of the examination, according to the doctor, an undergarment which Miss Banks wore was blood-stained.

Stockton gave the following version of the alleged rape: He said he arrived at the restaurant at about seven in the morning and went directly to the vault to change into his work clothes. After dressing he sat down on a box in the vault passageway and "dozed off," his feet being in

his locker. The first person to come in was Miss Banks, and in asking to get by she tried to push him around. He let her pass and resumed his former position. She snatched the cap from his head and he reached over to grab it. She backed away and he followed her. He then placed his arm around her neck to keep her from retreating with the cap. He then embraced her, reached under her dress, and continued his advances in this manner until his fingers had penetrated her vagina. He said she then remonstrated on account of the pain caused her, and a little later she again objected because she feared detection. According to his story this means of contact continued to a culmination in emission without actual coition. He then went down-stairs to his work, meeting two of the help as he reached their floor. He said that just prior to his leaving the vault Miss Banks complained of feeling physically sore. He denied having intercourse with her or that he had struggled with her in order to accomplish his desires. On the contrary, he said that while the circumstances above narrated were taking place both parties were on their feet, and that he used no force and did not throw her to the floor in a dorsal position and then superimpose himself upon her. He said that she told him one hour later that she was sore and afraid, to which he replied that there was nothing to be afraid of because he did not do anything. He said that several other times during the day she complained to him of being sore inside, and also requested him not to tell anybody.

Josephine Walsh, a waitress, said that Stockton came down from the vault first and that Miss Banks followed about ten minutes later. She noticed tears in Miss Banks' eyes and that she was very nervous. She told the witness at this time that "Ernie come up there and he started getting funny with me and he put me down on the floor and attacked me." The witness expressed her disbelief, and Miss Banks said the statement was true. The witness re-

lated that later in the morning Stockton requested her to obtain from Miss Banks information about her menstrual period.

Stockton argues that the prosecution has failed to prove him guilty of rape in that the conviction rests upon the uncorroborated testimony of Miss Banks, which is improbable and contradictory. He states a failure to show resistance or that she made an outcry. Fault is found with the complaint of the attack made by Miss Banks, in that it was not a spontaneous expression of feeling over the outrage, but was, in fact, a mere recital of a past event. Objection is also made to instructions.

The evidence in the record is conflicting. The jury must have believed the testimony of Miss Banks rather than that of Stockton. A comparison of their testimony with the other evidence reveals that hers is corroborated in whole or in part by other witnesses, while his testimony stands unsupported in its essential elements. She testified that she was placed on the floor in such a violent manner as to have stunned her. The physician's examination supports this. She testified to fighting with all her strength against the attack. Again the physician supports her story by saying that her bruises were of recent origin. She told of the penetration and emission. Stockton supports her partly in this by admitting emission without penetration. As the medical examination discloses a freshly ruptured hymen, the jury was required to determine from the evidence whether the hymen had been ruptured by the sexual organ of the defendant.

We cannot agree with Stockton's claim that Miss Banks did not make prompt complaint of the attack. Complaint was made by her to three persons: The first to a waitress who came into the vault and found her sitting on a box; the second to Josephine Walsh a few moments after the first complaint; and the third to the manager of the restaurant. Whether she resisted the attack to the best of

her ability and whether she was too shocked or stunned to make an outcry were questions for the jury to decide after seeing the witnesses and hearing them testify. The evidence was contradictory and was sufficient to warrant the verdict. *People* v. *Rotello,* 339 Ill. 448; *People* v. *Moore,* 350 id. 611.

Objection is made to instruction 2 for the People, which stated that to constitute the crime charged the intent alleged in the indictment must be proved, but that it need not be proved by direct evidence and is sufficient if the jury believe, beyond reasonable doubt, that such intent is shown by the facts and circumstances in evidence. Defendant says the instruction was needless, as intent is not an element of the crime of rape. Rape, according to the statute, is an infamous crime. (Smith's Stat. 1933, chap. 38, div. 2, sec. 7.) A criminal offense consists of a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention. (Ibid. sec. 8.) The intention is manifested by the circumstances connected with the perpetration of the offense. Ibid. sec. 9.

Instruction 4 for the People told the jury that it had no right to disregard the testimony of defendant simply because he is accused of crime, and that the jury might take into consideration whether his testimony had been corroborated or contradicted by credible evidence. The defendant does not quarrel with the law stated in the instruction as applied generally, but complains that in this particular case the items of "corroboration or contradiction" weigh heavily against him because his story was not corroborated. The objection is without merit, as such an instruction has been approved by this court. *People* v. *Lenhardt,* 340 Ill. 538; *People* v. *Flanagan,* 338 id. 353.

Instruction 8 stated that it was not the intention of the trial judge to give the jury any opinion as to the guilt of the defendant or to express any opinion as to the weight or sufficiency of the testimony or as to the credibility of

any witness, and that anything the court had said or done in the case was not to be construed as indicating that he had any opinion as to the facts appearing in evidence. Defendant claims that this instruction has been condemned by this court in *Lyons* v. *People,* 137 Ill. 602. That case contained an instruction submitted by the defendant and refused which stated that "any ruling which the court may have made during this trial should not be considered by you [the jury] as any indication that the court has any opinion as to what the verdict of the jury ought to be." We there held the instruction properly refused on the ground that the purpose of an instruction is to present the law to the jury and not to inform them of what inference they might or might not draw from the rulings of the court. In *People* v. *Kelly,* 347 Ill. 221, this court reiterated its previous holdings that it was beyond the province of a trial judge to comment upon the facts or express an opinion as to the weight of the evidence. In the present case the instruction was given in an apparent effort to guard the jury from construing any ruling of the court as an expression contrary to the law stated in the *Kelly case.* Since the defendant was tried by a jury the instruction operated to secure for him a verdict arrived at out of the minds of the jurors unprejudiced by anything the court may have said, or which they thought he might have said, respecting the weight of the evidence, the credibility of witnesses or as a comment upon the facts. The instruction did not presume to instruct the jury upon the inferences to be drawn or not to be drawn from the evidence. It was a correct statement of the law applicable to the case and in nowise conflicts with what this court said in the *Lyons case.*

In our opinion the verdict of guilty reasonably flowed from the evidence and the objections to the instructions are without merit.

The judgment of the criminal court of Cook county is therefore affirmed.                *Judgment affirmed.*