(No. 24857.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRED MILLARD, Plaintiff in Error.

*Opinion filed December 19, 1938.*

WALTER V. DYSERT, and H. J. HASCH, for plaintiff in error.

OTTO KERNER, Attorney General, WARD E. DILLAVOU, State's Attorney, and A. B. DENNIS, for the People.

Mr. CHIEF JUSTICE SHAW delivered the opinion of the court:

The plaintiff in error, Fred Millard, was found guilty in the circuit court of Edgar county of receiving stolen property and was sentenced to the penitentiary for a term of from one to ten years. He sues out this writ of error to review the judgment.

Roy Patrick, a farmer, testified that about fifty bushels of timothy seed were stolen from his farm sometime in December, 1936, and he reported it to the sheriff. He identified a sack of seed that was a part of the same crop but had not been stolen. Max Money, a seed merchant, testified that in August, 1937, he purchased from the plaintiff in error approximately 34 bushels of timothy seed at $1.10 a bushel which was about $1.90 less than the market price. He identified this seed by comparison, and declared it to be of the same crop. Russell Lowry, a truck driver, testified that he took some seed from plaintiff in error's house to St. Louis, late in February, 1937, but returned it; that something was said between James Evans, owner of the truck, and plaintiff in error, about "hot" seed but he didn't know whether it was then or at a later date. Another truck driver, who also had worked for Evans, testified that about that time he overheard a conversation between Evans and plaintiff in error; that Evans wanted money for a truck license and told plaintiff in error that he had some slot machines that were "hot" which he could sell, and plaintiff in error said that he had some seed that could be "hot" and he could take it to St. Louis. James Evans, owner of the truck, testified that he took twenty sacks of seed to

St. Louis, but returned them. On cross-examination, he said that he and plaintiff in error had some trouble over a bill and he was sued for it and that he "tipped off" a deputy sheriff that plaintiff in error had some "hot" grass seed. Roy Hess, the sheriff, testified that he had a conversation with plaintiff in error in October, 1937, and at that time he was told by him that he traded two used-truck tires, worth about $20 each, for the seed, to a man whom he did not know and that some of it had been sold to Max Money. Ern Kile, a deputy sheriff, testified that he had had a conversation with Jim Evans with regard to the seed about the first of July, 1937, but that Evans didn't tell him directly that plaintiff in error had it and, later, plaintiff in error told him, Kile, that he got the seed from a man whom he did not know, but who walked with a limp, and traded it to him for two second-hand truck tires worth $20 each.

Paul Milburn, who stole the seed, pleaded guilty to burglary and testified for the People. At the time he testified he had not been sentenced. He testified that he did some work for Roy Patrick in December, 1936, and at that time discovered the seed; that he had a conversation with the plaintiff in error about it and it was agreed between them that he would steal the seed and sell it to Millard for fifty cents a bushel; that he made three trips; that after the first trip Millard paid him $6.75, and he then made two more trips, was paid $9 the next morning and $6.75 on that evening; that part of the seed was put in plaintiff in error's car and the balance at the house; that the seed was hauled in a Model A. Ford, the first load about 9:00 P. M. and the last about 1:00 A. M. He further testified that he did not own a truck and that he did not trade the seed for truck tires.

Raymond Cline testified for the plaintiff in error that Milburn offered to sell him two truck tires shortly after Christmas, 1936, and that he walked with a limp and had one eye half closed. He failed to pick him out in the court

room and when Milburn stood up he was not positive that he was the person who offered the tires. Six witnesses testified that Jim Evans made threats against the plaintiff in error about the time he was sued. These six witnesses, in addition to four more, testified that Evans' reputation for truth and veracity was bad. Marion Evans, an oil salesman, testified that he was present at Millard's gasoline station when Milburn and Millard had a conversation about trading tires for grain. Glenn Whitsell testified that he was present when Marion Evans was there and he heard a conversation between Milburn and plaintiff in error regarding a trade for tires and saw them take the tires toward the street. Cecil Bunnell testified that Milburn got some tires from Millard when Marion Evans was there. James C. Edmundson, a brother-in-law of plaintiff in error, testified that he was present at 7:00 o'clock in the evening when the seed was being unloaded and nothing else was unloaded while he was there, and that he stayed until closing time. May Edmundson, his wife, testified that on this night she and Mrs. Millard were down town and had Millard's car all evening. Hurley Rollins, a roomer at Millard's home, testified that he saw Milburn unloading sacks about 7:00 o'clock in the evening. Henry Hardy, who was formerly married to Milburn's wife, testified that Millard came to him in October and inquired what Milburn looked like, and he gave a complete description of the man.

Plaintiff in error testified that he traded two truck tires to Milburn for the seed and that it was delivered to his house, none of it having been put in his car; that Jim Evans took some of the seed to St. Louis but brought it back, keeping three sacks on his truck. Later he sued Evans for that seed and some money that he owed, after they had had a fight over it, and he recovered a judgment. He denied that he knew the seed was stolen or that Milburn had told him so; that he kept the seed in open sight on the back porch of his house all the time that he had it; that mice

got into it and some of it was put in other bags and some in barrels. The wife of the plaintiff in error testified that she and her sister were driving Millard's car at the time Milburn delivered the seed, and that the sacks of seed were kept in plain sight on the porch of the house. The court instructed the jury to entirely disregard her testimony because she had remained in the court room after the court had ordered all witnesses excluded.

The plaintiff in error contends, first, that the seed was not sufficiently identified to properly prove the *corpus delicti*. There is no invariable rule as to the *quantum* of proof necessary to establish the *corpus delicti*. Each case must depend, in a measure, upon its own particular circumstances. (*People* v. *Goodwin,* 263 Ill. 99.) In the case at bar, Milburn admittedly stole the seed and delivered it to the plaintiff in error. A comparison was made between seed left behind and that stolen, and it was shown to be the same seed, and, further, the plaintiff in error admitted in his testimony that the seed delivered to him by Milburn was the same seed which he sold to Max Money. We believe that the *corpus delicti* of the crime of receiving stolen property is satisfactorily shown by the record.

It is next contended that the proof does not show beyond a reasonable doubt that plaintiff in error knew the seed was stolen. We have set out the substance of the testimony. The weight to be given to this evidence was within the province of the jury and unless this court is convinced that the verdict of the jury is contrary to the weight of the evidence it is not within our sphere to set aside its verdict. (*People* v. *Diekelmann,* 367 Ill. 372.) This is true even though the evidence consists, in part, of the testimony of an accomplice.

It is further contended that the court erred in instructing the jury to disregard the testimony of the wife of the plaintiff in error. It is true that a party should not be deprived of material testimony because a witness, through no

fault of the party, violates a rule of the court, but before a court would be justified in reversing a judgment it should be made to appear that the party offering such witness has been deprived of material testimony. (*People* v. *Viskniskki* 255 Ill. 384.) At the most, the testimony of Mrs. Millard is only cumulative and plaintiff in error was not deprived of any material testimony.

Plaintiff in error complains of certain instructions which were given for the People and a number that were refused for him. People's instruction number eight tells the jury that the testimony of an accomplice should be acted upon with great caution and then states "the credibility of such an accomplice is for the jury to pass upon as they pass upon the credibility of any other witness." The giving of this instruction has been recently condemned in *People* v. *Weitzman,* 362 Ill. 11, *People* v. *Zaransky,* id. 76, and *People* v. *Gleitsmann,* 361 Ill. 165. People's instruction number one, which directed a verdict of guilty, fails to include certain essential elements to make it a valid one. It did not require proof that the property was stolen by someone other than the plaintiff in error. Plaintiff in error's instruction number two, stating, "You have no right to disregard the testimony of the defendant simply because he is accused of a crime, and you may take into consideration whether his testimony has been contradicted or corroborated by credible evidence and circumstances," was a good instruction and should have been given. (*People* v. *Stockton,* 355 Ill. 405.) We have examined the other instructions complained of but find no substantial error in them.

We will not reverse a judgment of conviction based upon the verdict of a jury unless it is apparent the errors committed were such as to have deprived the defendant of a fair trial, nor in a case where we cannot see that there is any probability that a different result might have been arrived at had the errors not been committed. However, we do not believe this case falls within that classification.

Considering the record, in its entirety, we cannot say that there is no probability that a different result might not be reached on another trial, and we believe that the ends of justice will be best served by remanding the cause for the consideration of another jury, with all of the evidence and proper instructions before it.

The judgment of the circuit court of Edgar county is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*