THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SPENCER PARKS, Defendant-Appellant.

(No. 60503; )

First District (1st Division)—November 17, 1975.

Paul Bradley and Martin Carlson, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE EGAN delivered the opinion of the court:

In August of 1972, co-defendants Spencer Parks and Virgil Hooper were indicted for the armed robbery and murder of Willie Lee Parham. Parks was granted a severance. Hooper was tried before a jury which was unable to agree on a verdict as to either charge. Parks was then tried before a jury. He was found guilty of armed robbery but no verdict could be reached on the murder charge.

Chicago Police Officer Arthur Huburt, in response to a call early in the morning of April 11, 1972, went to a 17-story apartment building at 3615 South Federal in Chicago. On the ninth floor landing of the stairway he found the deceased, Willie Lee Parham, lying on the floor with a gunshot wound in the back of the neck. Surrounding the deceased and leading down the stairs to the sixth floor were spots of blood, small change and several pieces of identification. Although a wool cap was found near the victim, he was not wearing an outer coat which a co-worker had seen him wearing earlier in the evening. The only evidence linking the defendant Spencer Parks to the incident was the testimony of his co-defendant Virgil Hooper.

Hooper testified on behalf of the State that he left work at one o'clock in the morning of April 11, 1972, and went to visit a friend at 3615 South Federal. As he waited in the lobby for the elevator, Willie Lee Parham came in and also waited for the elevator. After a short time passed, Parham started to walk up the stairs and then, according to Hooper, Parks and two unidentified individuals entered the building and started to follow Parham up the stairs. Hooper knew Parks and the two men with him. The four men, including Hooper, caught up with Parham on the sixth floor where Parks drew a pistol and told Parham, "This is a stickup." Parks then told Hooper to take Parham's coat while the other two men went through his pockets. At this point Parham broke away and started to run up the stairs, whereupon Parks fired at him. After the shot, Parham stumbled up the stairs while the four men went down the stairs and off their separate ways. Hooper met Parks the next day and Parks told him that he had sold the coat.

Parks denied any participation in the robbery; he testified that he had seen Virgil Hooper only twice and neither time was on the night of this robbery.

The murder and robbery charges were still pending against Hooper when he testified. After his trial he talked to his attorney and one of the assistant State's Attorneys who prosecuted his case; as a result of those conversations he decided to become a witness for the State. He was then transferred to the State's Attorney's witness quarters under an individual bond which had as a condition that he testify at the defendant's trial. He testified that as a result of this conversation he was going to plead guilty to armed robbery, not murder, and he was told by both his attorney and the assistant State's Attorney that the State would recommend a sentence of five years. At his own trial, he had denied that he participated in the robbery and had said he went directly home from work. In this case, he admitted that those statements were lies. He also admitted lying at his trial when he denied making a statement to the police.

At the conference on instructions the court first took up the State's instructions. At that time, the assistant State's Attorney told the court that the State was withdrawing IPI—Criminal No. 3.17 which recites:

"An accomplice witness is one who testifies that he was involved in the commission of a crime' with the defendant. The testimony of an accomplice witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

The assistant State's Attorney also told the judge that the defense attorney had indicated that the instruction that the defense was submitting "was

in variation with the Illinois I.P.I. and the Criminal Code" and that it would probably not be given. The prosecutor also said: "I would note at this time that the People would not object to the Illinois I.P.I. 3.17 being given, if there is a request." Later, the defense tendered the following instruction:

> "Where a witness says he was involved in the commission of a crime with the defendant, that testimony of that witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of other evidence in the case. It should also be carefully examined in light of lack of other evidence in the case."

That instruction was refused. Consequently, no instruction dealing with the testimony of an accomplice was given to the jury. The defendant now contends that the failure to instruct the jury regarding an accomplice's testimony was error.

As a general rule, the court is under no obligation to give instructions not requested by counsel. (*People v. Springs*, 51 Ill.2d 418, 283 N.E.2d 225.) The rule is not unqualified, however. For example, in *People v. French*, 5 Ill.App.3d 908, 909, 284 N.E.2d 481, the court reversed the conviction where the defense submitted no instructions, and IPI—Criminal No. 2.03, which covers the presumption of innocence and reasonable doubt, was not given. The court held under the facts of that case, where the presumption of innocence was not mentioned in any instruction or argument to the jury, it was error to fail to give the instruction. In *People v. Joyner*, 50 Ill.2d 302, 278 N.E.2d 756, the defense submitted a manslaughter instruction which, as in this case, was refused because it was not in conformance with the IPI instruction. Consequently, the jury was not instructed on manslaughter although there was evidence to support it. In reversing a murder conviction for the failure to submit a manslaughter instruction, the court said (50 Ill.2d at 307):

> "Under the circumstances of this case, the defendants' failure to tender the appropriate IPI instruction was not as important with reference to the fundamental fairness of their trial as the requirement that the jury be fully and properly instructed. The failure to instruct on this important aspect of the case necessitates a remand for a new trial."

We think the reasoning of *Joyner* is applicable here. The State's case rested entirely on the testimony of Hooper. That testimony was susceptible to some damaging assaults. The State and the court were aware that an accomplice instruction was proper; and we judge, under the facts of this case, that the failure to give any accomplice instruction did not meet the standard of "fundamental fariness" required by *Joyner*.

Since we are remanding this case for a new trial, we deem it appropriate to discuss another issue which may recur at another trial. The court refused to give the following defense instruction:

> "In weighing and considering the credibility of witnesses the jury should consider whether any witness has become interested or hopes to receive any reward, immunity or benefit from the prosecution of the case, or has in any other way become interested or had his feelings or passions enlisted against the defendant; and if the jury shall find any such witness has sustained or does sustain such relation in the case as would naturally tend to interest him, then it is the duty of the jury to consider whether such feelings or interest of such witness has had any effect upon such of his testimony as is material to the issues in this case."

The jury was given IPI—Criminal No. 1.02, which told the jury that in determining the credibility of any witness they might consider "any interest, bias, or prejudice he [might] have, and the reasonableness of his testimony considered in the light of all the evidence in the case."

■■ Only when there is no applicable pattern instruction or when such instruction inaccurately states the law, may a defendant tender an instruction that differs from the Illinois Pattern Instructions in criminal cases. (Ill. Rev. Stat. 1973, ch. 110A, § 451(a); *People v. Dickens*, 19 Ill. App.3d 419, 424, 311 N.E.2d 705; *People v. Phillips*, 129 Ill.App.2d 455, 263 N.E.2d 353.) Assuming that the jury had otherwise been properly instructed, the IPI instruction which was given adequately informed the jury of its duty with respect to credibility of witnesses; and the defense instruction was unnecessary and properly refused. (Compare *People v. Mostafa*, 5 Ill.App.3d 158, 274 N.E.2d 846.) If the defendant's position is correct, the refused instruction, although not in IPI, should be given in all cases involving accomplice testimony. Such a holding could only serve to render meaningless the long hours of dedicated service of the Committee on Jury Instructions and defeat the purpose of the pattern instructions.

The judgment of the circuit court is reversed and the cause remanded for a new trial.

Judgment reversed and remanded for a new trial.

BURKE, P. J., and SIMON, J., concur.