THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY W. PANGBURN, Defendant-Appellant.

Second District (1st Division)   No. 75-16

Opinion filed September 10, 1976.

782

Ralph Ruebner and Daniel Cummings, both of State Appellate Defender's Office, of Elgin, for appellant.

William J. Cowlin, State's Attorney, of Woodstock (Daniel A. Mengeling, Assistant State's Attorney, and Phyllis J. Perko, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The defendant was jointly indicted with one Michael McClanahan for burglary, theft of more than $150 and criminal damage to property. In a jury trial he was tried separately, found guilty and concurrently sentenced to one to five years for burglary, one to five years for theft and 60 days for the criminal damage. Defendant is presently on parole.

In this appeal defendant raises three issues, *viz.*, the trial court erred in not tendering an instruction concerning accomplice testimony, that his privately retained counsel was incompetent and that the trial court erred in entering judgment and sentence upon the theft and criminal damage to property verdicts.

■■ The State has conceded that the sentences for theft and criminal damage counts should be vacated as these charges arose out of the same course of conduct as the burglary. *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819.

In the early morning hours of September 3, 1973, the Five Corners Tap in Marengo, Illinois, was burglarized. Entry was gained by cutting a hole in the door. Money in excess of $200, a Ruger .357 Magnum pistol, liquor, a canned ham and a Pabst beer clock were taken from the premises by the burglars. On October 10, 1973, Detective Eisele of the McHenry County sheriff's department was called to the Stephenson County jail where he and Officer Macheroux interviewed Michael McClanahan. McClanahan admitted the burglary of the Five Corners Tap and stated that he and Pangburn had driven to the scene of the burglary in Pangburn's car and that he and the defendant had burglarized the tavern and divided the money.

The two detectives then went to the Winnebago County jail and interviewed the defendant Pangburn about 10 o'clock in the evening. After giving the defendant his *Miranda* warnings, the detectives advised Pangburn that McClanahan had made a written and oral statement implicating the defendant. After about ten minutes, Detective Eisele testified, Pangburn admitted that he had burglarized the tavern with McClanahan, that he had taken the .357 Magnum pistol and that his car had been used in the burglary. McClanahan testified that he and Pangburn, on the night of September 2, were at McClanahan's father's house; that they consumed whiskey and vodka and decided to burglarize

the tavern. He then described the details of the burglary and the various things that were taken.

The defendant testified in his own behalf and denied participation in the burglary, stating that on the night in question he had stayed at the house of his brother, Richard Pangburn, and had not returned home until Monday. Several witnesses testified as to the alibi of the defendant. Defendant's father testified that on the night in question, out of "idle curiosity," he checked on his son and saw him at Richard Pangburn's house about midnight; Richard Pangburn testified that on the night in question the defendant was at his home, that he and his wife, Linda, played cards all evening with Linda and Robin Roberts and the defendant and that the defendant had spent the night at his home. Linda Pangburn testified substantially the same. Both Linda and Robin Roberts testified that they had no recollection of being at Richard Pangburn's house on the night in question. Linda Roberts testified that she couldn't recall whether she saw the defendant on that night and Robin Roberts testified that he could not recall whether he saw the defendant at all during the early part of September.

■■ We consider first the contention of the defendant that the trial court erred in not tendering *sua sponte* an instruction relating to accomplice testimony (IPI—Criminal No. 3.17). Defendant further contends that this was plain error and that fundamental fairness required the giving of this instruction. Defendant admits that the trial courts are under no obligation to give instructions not requested by counsel and that ordinarily no party may raise on appeal the failure to give an instruction unless he shall have tendered it. In support of the argument that such an instruction, however, should have been given in this case, defendant has cited *People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756, and *People v. Parks* (1975), 34 Ill. App. 3d 180, 340 N.E.2d 121. We do not find either of these cases to be controlling. In *People v. Parks* the only evidence linking the defendant with the armed robbery therein was the testimony of his accomplice. That is not the situation in the case before us. The evidence against the defendant herein was not only the testimony of his accomplice but the statement and the confession of the defendant himself that he did, in fact, commit the burglary. Additionally, in *Parks*, the accomplice instruction (IPI—Criminal No. 3.17) was requested by the defendant and was denied by the court. The court in *Parks* considered the case of *Joyner* and applied the reasoning therein to the case before it. In *Joyner* the defendant was charged with murder and the court therein observed that "this was a close case factually" and that:

> "Under the circumstances of this case, the defendants' failure to tender the appropriate IPI instruction was not as important with reference to the fundamental fairness of their trial as the

requirement that the jury be fully and properly instructed." 50 Ill. 2d 302, 307, 278 N.E.2d 756, 759.

We therefore find that neither *Joyner* nor *Parks* are applicable to the situation we find in the case before us. The IPI—Criminal No. 3.17 was not requested by defense counsel and we do not find, in light of defendant's confession, that this is a close case, as was the situation in *Joyner*.

■■ The next argument of the defendant is that his retained counsel was incompetent. Appellate counsel would have us reconsider the Illinois rules for effectiveness of counsel. Specifically, counsel contends that there should be no distinction in the law between standards of effectiveness for retained and appointed counsel and, secondly, that the Illinois "farce or sham" test for effectiveness of counsel is outmoded and suspect. Counsel would have us adopt the "reasonably competent attorney" standard for effectiveness. In this case we feel that the counsel for the defendant was reasonably competent. This issue was raised in *People v. Schott* (1976), 39 Ill. App. 3d 266, 350 N.E.2d 49, 58-59. Reference is made to our holding in that case, and we repeat, that the Supreme Court of Illinois in *People v. Torres* (1973), 54 Ill. 2d 384, 391, 297 N.E.2d 142, 146, again stated that it would not reverse a conviction because of incompetence of retained counsel unless the representation of counsel was of such a low caliber as to amount to no representation at all or reduce the court proceedings to a farce or sham.

With reference to the failure to give the accomplice instruction, it is to be noted that counsel vigorously argued that the testimony of an accomplice should be viewed with skepticism. In support of the alleged incompetence of trial counsel, appellate counsel states that the failure to give an instruction on accomplice testimony is indicative of trial counsel's incompetence and has cited *People v. Butler* (1974), 23 Ill. App. 3d 108, 112, 318 N.E.2d 680, 683. In *Butler* the court stated:

> " * * * the testimony of the accomplice, Douglas Clark, was crucial to the State's case, which otherwise was supported only by highly questionable circumstantial evidence."

In the case before us that is not the situation, as the testimony of Detective Eisele as to the defendant's admission or confession as to his participation in the burglary would have, of itself, been sufficient standing alone to convict the defendant. The failure to give this instruction did not so prejudice the defendant herein that the outcome of the trial would have been different had this instruction been given. In *Butler* the court found that the cumulative effect of a multitude of errors did, in fact, constitute incompetence of counsel. We do not find that to be the situation here.

Appellate counsel further contends that trial counsel should have moved to suppress defendant's purported confession, particularly

contesting the voluntariness of the confession. There is no disagreement but that the defendant Pangburn did in fact admit his participation in the burglary after 10-15 minutes of questioning when he was confronted with the knowledge that Michael McClanahan had implicated him as being the other party involved. Counsel now suggests that evidence should have been introduced by trial counsel that defendant was suffering from a head injury. Examination of the record does not disclose that the alleged head injury, purportedly sustained by the defendant some time before, was pertinent to the reason for his confessing his participation in the burglary. The record discloses the following colloquy on cross-examination:

"Q. * * * Now, you stated that just before you admitted that you were involved with Mike, you were half asleep and irritated, is that correct?

A. Yes.

Q. I see.

Now, how long had you been talking to the Officers by that time?

A. Oh, say between—approximately ten minutes.

* * *

Q. So, can you tell us just how long you had been there before you made this admission?

A. Oh, approximately—between ten and fifteen minutes, approximately fifteen minutes.

Q. Okay.

Now you stated—

Was there anything else—

Did you have any other problems besides being half asleep and being irritated?

A. Not that I recall."

In view of this testimony of the defendant, we find no evidence that he was suffering from a head injury which resulted in his making a false confession.

Defendant has cited *People v. Harter* (1972), 4 Ill. App. 3d 772, 282 N.E.2d 10; *People v. Odom* (1966), 71 Ill. App. 2d 480, 218 N.E.2d 116; and *People v. Jackson* (1968), 96 Ill. App. 2d 99, 238 N.E.2d 234, as to incompetence of counsel. We do not find these cases to be in point and are not applicable to the facts presented in this case.

The question of whether the motion should have been made to suppress the confession is, in our opinion, under the facts of this case, a matter of tactics and judgment on the part of trial counsel. As pointed out above, within 10-15 minutes after the start of the questioning, the defendant admitted his participation in the burglary. His excuse at trial was that he was irritated and sleepy and that is the reason he confessed.

Under these circumstances it may well be that trial counsel decided, as a matter of trial tactics, that any effort to suppress the confession would be futile.

The last argument in support of the contention that trial counsel was incompetent is that trial counsel called two defense witnesses who implied, upon cross-examination, that defendant's family had solicited favorable testimony from them, and possibly suborned perjury.

It is to be noted that the testimony of the Roberts was supportive of the defendant's alibi in that they did not deny that they played cards with the defendant on the night in question, rather they could not recall if that was the particular night. They testified that they frequently played cards with the defendant at his brother's home and that the defendant often spent the night there. It was not until, under the heat of cross-examination, that the testimony suggesting attempted subornation of perjury was revealed. It was only upon cross-examination that the alibi witnesses, Linda and Robin Roberts, testified that they could not recall having been with the defendant at the Richard Pangburn home playing cards on the night of the robbery. It is obvious that the witnesses were supplied by defendant's family, and trial counsel is not a guarantor for the testimony of witnesses.

Examination of the entire record discloses that trial counsel was confronted with an accomplice who testified in detail as to how he and Pangburn perpetrated the burglary. In closing argument counsel deprecated this testimony of the accomplice. Trial counsel was then confronted with a confession of his client that he had, in fact, participated in the burglary in question. We find nothing in the record that would disclose a basis for suppression of the confession.

In retrospect, it is, of course, comparatively easy to point out how it should have been done. But, in viewing the record as a whole, with the evidence conclusive and overwhelming as to the guilt of the defendant, we find that defendant was not denied the effective assistance of his retained counsel in defending this cause.

The conviction for burglary is affirmed. The convictions for theft and criminal damage to property are vacated.

Affirmed in part; vacated in part.

SEIDENFELD and HALLETT, JJ., concur.