THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL LEWIS, Defendant-Appellant.

Second District   No. 76-449

Opinion filed December 30, 1977.

Ralph Ruebner and Andrew Berman, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Barbara A. Preiner, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

The defendant-appellant, Michael Lewis, hereafter the defendant, was found guilty of armed robbery by a Winnebago County jury and was sentenced to a term of 4-12 years in the penitentiary. On appeal the defendant asserts that he was not proved guilty beyond a reasonable doubt, that he was denied effective assistance of counsel, and that the trial court committed reversible error by failing to give *sua sponte* an instruction on the weight to be given the testimony of an accomplice. Upon reviewing the record and weighing the arguments presented, we conclude that the judgment of the circuit court must be affirmed.

At the defendant's trial, the State's first witness was Ms. Barbara Clay, who testified that she was in the Bird's Nest Tavern, a Rockford drinking establishment, at about 6 p.m. on February 5, 1976, when she approached the complaining witness, Mr. Francisco Fresco, who bought her a drink.

Ms. Clay then left Mr. Fresco to briefly converse with the defendant and Otto Patterson. Ms. Clay then returned to Mr. Fresco and apparently agreed to have sexual relations with him. The two left the Bird's Nest Tavern and walked a short distance to a doorway leading to a flight of stairs. The two entered the doorway, and according to the testimony of Ms. Clay, Mr. Fresco proceeded up the stairs while she did not. When Mr. Fresco reached the top of the stairs there was a noise, but Ms. Clay could neither see what happened nor understand what was said by the voices she heard. Ms. Clay next saw the defendant as he was running from the doorway they had entered. Thereupon, Ms. Clay returned to the Bird's Nest Tavern where, after about five minutes, she met with the defendant and Mr. Patterson. Ms. Clay testified that she was told that the robbery had yielded only a watch and some change and received $4 as her share. She concluded her testimony by stating that the State's Attorney's office had agreed to recommend her for probation in exchange for her pleading guilty to her participation in the crime and testifying at the defendant's trial.

The State's next witness was Mr. Fresco. Due to his limited knowledge of the English language, Mr. Fresco testified through an interpreter. According to Mr. Fresco, he was in the Bird's Nest Tavern between 7 and 8 p.m. on February 5, 1976, when he was approached by Ms. Clay. After he bought her a drink, Ms. Clay left Mr. Fresco to converse with some friends. This conversation took place out of Mr. Fresco's view. After a few minutes, Ms. Clay returned to Mr. Fresco and they apparently agreed to have sexual relations. The two then left the tavern and walked a short distance to a doorway leading to some stairs. Mr. Fresco testified that Ms. Clay preceded him up the stairs and that when they reached the top he was grabbed from behind by a man carrying a knife, who was accompanied by another man carrying a gun. The two assailants took Mr. Fresco's watch, a ring, and his wallet, which Mr. Fresco said had $155 in it. During the course of the robbery, Mr. Fresco was struck in the eye by the man carrying the knife. After the robbery, Mr. Fresco went to another bar to call the police and receive some ice for his injured eye.

Mr. Fresco's testimony continued, and it brought out that he had been unable to describe his assailants to the police immediately after the crime. However, Mr. Fresco maintained that he could always identify his assailants if he saw them again. Mr. Fresco then identified the defendant as one of his assailants. Mr. Fresco also testified that he was not intoxicated on the night in question.

On cross-examination it was revealed that Mr. Fresco had been unable to pick out the defendant's photograph out of six others when the police questioned him on the day after the crime. Mr. Fresco was also questioned on cross-examination about statements he had made at a

previous hearing. Great difficulty was had in this regard because of the necessity to interpret the previous questions and answers to Mr. Fresco. These previous statements all related to Mr. Fresco's prior inability to identify the defendant. In most instances, Mr. Fresco replied that he had remembered making the statements in question. It was stipulated at the close of the defendant's case that during Otto Patterson's trial for his part in the crime, Mr. Fresco stated he could not recognize his other assailant.

The State's third witness was Roberto Dangle. Mr. Dangle manages the bar from which Mr. Fresco called the police and also is a friend of Mr. Fresco. Based on his experience as a tavern manager who had seen a number of intoxicated people, Mr. Dangle testified that he did not believe that Mr. Fresco was intoxicated on the night in question.

The defendant's first witness was Arthur Shaw, who testified that he had a couple of drinks with Mr. Fresco in the Bird's Nest Tavern at approximately 5:30 on the evening of the robbery. In cross-examination, Mr. Shaw admitted he was uncertain of the date and testified that he had not seen Ms. Clay, a Negro midget, on the night he saw Mr. Fresco in the Bird's Nest Tavern. Defense counsel then explained to the court that it had not subpoenaed the police officers he wished to call as witnesses because he believed the State would do so. He subpoenaed them following the first day of trial, but one of them, Officer Jacobi of the Rockford Police Department, was not served because it was his day off. (Apparently it is the policy of the Rockford Police Department to serve subpoenas on department members when they go on their shift.) Defense counsel made an offer of proof that Officer Jacobi would testify to the effect that Mr. Fresco was slightly intoxicated on the night of the robbery.

The defense called three other Rockford police officers, all of whom testified to Mr. Fresco's inability to describe his assailants or to pick their photographs out of a group of others. On cross-examination, two of these officers said Mr. Fresco told them during their questioning of him that he could recognize his assailants if he saw them again.

During the instruction conference, the defense counsel submitted an instruction on the weight to be given the testimony of an accomplice. However, he subsequently withdrew that instruction.

■■ The defendant's first contention on appeal is that he was not proved guilty beyond a reasonable doubt. We do not agree. A jury's determination of guilt will not be set aside unless the evidence presented is so unreasonable, improbable, or unsatisfactory as to justify reasonable doubt of the defendant's guilt. (*People v. Tate* (1976), 63 Ill. 2d 105, 345 N.E.2d 480.) In the case at hand, the jury was presented with ample evidence to justify its verdict of guilty. To begin with, there is the testimony of Ms. Clay, who admitted participation in the crime. She testified that she talked with the defendant and Otto Patterson

immediately before and after the crime and that they gave her a portion of the proceeds of the crime for her help in it. Secondly, there is the testimony of Mr. Fresco, the victim, who identified the defendant as one of his assailants. While Mr. Fresco had previously been unable to identify the defendant, this inability was fully brought to the jury's attention during cross-examination. The testimony of these two witnesses was uncontradicted and therefore gave the jury an ample basis for its finding of guilt.

The defendant's second assertion is that he was denied effective assistance of counsel. As example of his court-appointed counsel's ineptitude, the defendant cites his counsel's failure to subpoena a witness whose testimony would have been favorable to him, his decision to withdraw an instruction on the weight to be given the testimony of an accomplice, and his failure to preserve a complete record by not insisting that the final arguments be transcribed. We do not find the defendant's assertions to be persuasive.

■■ In reviewing the competency of the trial counsel, a two-pronged test is used. First, it must be shown that trial counsel was actually incompetent in carrying out his duties. Secondly, it must be demonstrated that substantial prejudice resulted from the trial counsel's incompetency. (*People v. Dudley* (1970), 46 Ill. 2d 305, 263 N.E.2d 1, *cert. denied* (1971), 402 U.S. 910, 28 L. Ed. 2d 651, 91 S. Ct. 1386; *People v. Bouse* (1977), 46 Ill. App. 3d 465, 360 N.E.2d 1340.) The incidents of incompetency alleged by the defendant do not meet this test, either individually or collectively, nor does our review of the record find any further evidence of incompetency on trial counsel's part.

■■ We turn next to defense counsel's failure to subpoena Officer Jacobi of the Rockford Police Department. Defense counsel stated that he believed that Officer Jacobi would testify to the effect that Mr. Fresco was somewhat intoxicated on the night of the crime. Such testimony would have been helpful to the defendant, and therefore defense counsel should have subpoenaed Officer Jacobi. However, on appeal, the defendant has not demonstrated substantial prejudice to him as a result of this failure as required by *Dudley* and *Bouse*. The most Officer Jacobi's testimony could have done would have been to dispute the testimony of Mr. Fresco and Mr. Dangle, both of whom asserted Mr. Fresco was not intoxicated on the night of the crime.

■■■ Our review of the competency of court-appointed counsel does not extend into areas involving the exercise of judgment, discretion or trial tactics by trial counsel, even though appellate counsel and the reviewing court might have acted in a different manner. (*People v. Martin* (1970), 44 Ill. 2d 489, 256 N.E.2d 337; *People v. Falconer* (1975), 33 Ill. App. 3d 563, 338 N.E.2d 216.) The decision to waive the recording of final

arguments was clearly within the discretion of trial counsel and does not mandate a conclusion that trial counsel was incompetent. (*People v. Barbour* (1972), 5 Ill. App. 3d 323, 282 N.E.2d 175.) Nor was the decision to withdraw the tendered instruction on the testimony of an accomplice evidence of incompetency. The fact that defense counsel tendered the instruction clearly shows he was aware of the possibility of giving it. His withdrawal of the instruction apparently was brought on by a strategic decision to attempt to disassociate the defendant from Ms. Clay, an admitted participant in the crime. In retrospect, this may not have been the best course to follow, but it clearly was within the bounds of the trial counsel's discretion on trial tactics. *People v. Austin* (1974), 23 Ill. App. 3d 520, 319 N.E.2d 306.

The defendant's final contention is that the trial court erred by not giving *sua sponte* an instruction on the weight to be given the testimony of an accomplice. In support of his argument, the defendant relies upon *People v. Parks* (1975), 34 Ill. App. 3d 180, 340 N.E.2d 121, where the First District held that the trial court committed reversible error by not giving *sua sponte* an instruction on the weight to be given the testimony of an accomplice in a case where the State's case consisted primarily of the testimony of the accomplice. However, the First District was reversed in *People v. Parks* (1976), 65 Ill. 2d 132, 357 N.E.2d 487. The supreme court found that upon the facts in that case it was not in error for the trial court to fail to *sua sponte* instruct the jury on the weight to be given the testimony of an accomplice. The facts the supreme court seemed to find controlling were the defense counsel's clear desire that IPI Criminal No. 3.17 (Illinois Pattern Jury Instructions, Criminal, No. 3.17 (1968)) not be given and the fact that the jury was fully instructed on the elements of the crime, the presumption of innocence, and the burden of proof.

■■ We find the case at hand clearly falls within the supreme court's rationale in *Parks*. The jury having been instructed as to the law, including its duty to judge the credibility of the witnesses, the trial court's failure to give an accomplice instruction did not deprive the jury of any essential guidance in its evaluation of the evidence. The defense counsel's tendering and subsequent withdrawal of the accomplice instruction indicates it was the defense's strategy not to link the defendant with Ms. Clay by the tendering of an instruction on the weight to be given the testimony of an accomplice.

We therefore affirm the judgment of the circuit court of Winnebago County.

Judgment affirmed.

SEIDENFELD and WOODWARD, JJ., concur.