THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES E. PINE, Defendant-Appellant.

Third District    No. 79-120

Opinion filed May 27, 1980.—Rehearing denied June 24, 1980.

302

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:
Following a confrontation with police officers at his place of employment, defendant Charles Pine was charged in a two-count

indictment with aggravated battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(b)(6)) and resisting a peace officer (Ill. Rev. Stat. 1977, ch. 38, par. 31—1). After a jury trial, he was acquitted of the former charge and convicted of the latter. He was sentenced to a 6-month term of probation, including a $100 fine and 3 days imprisonment.

The count of the indictment charging resisting a peace officer alleged:

"[T]hat [defendant] knowingly resisted the performance by Janet Lavery of an authorized act within her official capacity, being the arrest of [defendant], knowing Janet Lavery to be a peace officer engaged in the execution of her official duties, in that he hit Janet Lavery several times * * *."

Evidence at trial established that on the evening of August 11, 1978, three police officers went to defendant's place of employment, Alexander's Root Beer Stand in Bellevue, Illinois, and asked him to step outside for questioning. Officer Janet Lavery testified that when she began to question defendant concerning a previous incident, he started "screaming and cursing, flailing about." He made a statement related to her questioning, and she pulled out her *Miranda* warning card. At this point defendant swung at her with his arm and missed. Continuing with Lavery's testimony, she followed him into the root beer stand, put her hand on his shoulder, and told him that she wasn't through talking with him, and that he was under arrest for disorderly conduct. Defendant said she could not arrest him without a warrant and tried to put her arm into a deep-fat fryer full of hot grease. Officer Stephen Miller then grabbed defendant, and as Miller pulled him away from Lavery, defendant hit her, knocking her against the deep-fat fryer, into the wall, and onto the floor. The three officers eventually subdued defendant and handcuffed him. In the process defendant kicked or hit all three officers, and Miller slapped defendant with an open hand.

Officers Michael Williams and Miller gave testimony which corroborated Lavery's account of the incident in many respects. However, Williams testified that Lavery told defendant he was under arrest for assaulting a peace officer rather than for disorderly conduct. Williams also said he did not see defendant try to put Lavery's hand into the deep fat fryer although defendant was not out of Williams' sight during the incident.

Testifying for the State, Edward Bowers said that he interviewed defendant 4 months after the incident, and that defendant told Bowers he had no intention of allowing the police officers to arrest him. Defendant also told Bowers that none of the officers ever told him he was under arrest.

Defendant's account of the incident was quite different from that of the police officers. He testified that when he was questioned, he told

Lavery he was going to telephone his lawyer. When Lavery took out her *Miranda* warning card, he walked toward the root beer stand. Lavery grabbed his shirt as he reached the door, and they argued about his right to make a telephone call until the other two officers pushed their way through the door, knocking him to the floor. The officers pounced on him, struck him in the face with a flashlight, and finally handcuffed him. Defendant denied striking any of the officers and said he was not informed he was under arrest until he arrived at jail.

Debbie Andrews, an employee of the root beer stand, and Anna Williams, a customer, testified for the defense that after Lavery started reading defendant his rights, he said he was going to call his lawyer but was prevented from doing so by Lavery. Deanna Mibbs, another employee, and Carol Panus, the manager of the root beer stand, testified that the officers prevented defendant from using the telephone. They said one of the officers struck defendant with a flashlight, and Panus testified that when defendant was knocked to the floor, he was still holding a drink in one hand and a sandwich in the other.

During closing argument the prosecutor stated, without objection by defendant, that police officers would risk losing their jobs by committing perjury.

The case was submitted to the jury with what defendant refers to as "appropriate instructions." Included in the instructions were the following:

"To sustain the charge of resisting or obstructing a peace officer, the State must prove the following propositions:
FIRST: That Janet Lavery was a peace officer; and
SECOND: That the defendant knew Janet Lavery was a peace officer; and
THIRD: That the defendant knowingly resisted or obstructed the performance of an authorized act by Janet Lavery. * * *"

"A person is not authorized to use force to resist an arrest which he knows is being made by a peace officer, even if he believes that the arrest is unlawful and the arrest in fact is unlawful."

During deliberations the jury submitted written questions to the court concerning the definition of arrest and authorized act by a police officer. Defense counsel waived defendant's presence, and the jury was called back into the courtroom. Without consulting the attorneys as to the form of the answer, the court orally instructed the jury to use its common sense in evaluating those terms. The foreman of the jury then asked the court about the relationship between the *Miranda* warnings and an arrest and was told by the court that the reading of the warnings has nothing to do with whether an arrest has been made. The foreman then asked whether approaching a person and questioning him was an authorized act by a

police officer. The court told the jury to rely on its experience in answering that question. Defense counsel interposed no objection to the manner in which the jury's questions were answered.

Defendant's first argument on appeal is that the State failed to prove him guilty beyond a reasonable doubt. Section 31—1 of the Criminal Code of 1961, which defines the offense, provides:

"A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity commits a Class A misdemeanor." (Ill. Rev. Stat. 1977, ch. 38, par. 31—1.)

Defendant acknowledges that even an unlawful arrest is an "authorized act" within the meaning of the above statute (*People v. Locken* (1974), 59 Ill. 2d 459, 322 N.E.2d 51), and that sufficient evidence was introduced to convict defendant under that theory. He maintains, however, that the questions asked by the jury during deliberations show that it disbelieved the officers' testimony that defendant was told he was under arrest. The verdict of not guilty on the aggravated battery charge is said to be another indication that the jury disbelieved the officers' testimony, and the jury must have convicted him on the basis of his conduct in walking away from Lavery to telephone his lawyer while she was questioning him. Such conduct, he argues, cannot support the conviction since, under the circumstances of this case, detaining defendant for questioning and preventing him from calling his lawyer were not "authorized acts" within the meaning of section 31—1.

■■ We are not persuaded by these arguments. We are aware of no authority for the proposition that a reviewing court can assume, on the basis of questions asked by the jury during deliberations, that it disbelieved testimony which would otherwise be sufficient to support a conviction. It is true that in *People v. Clinkscales* (1974), 19 Ill. App. 3d 173, 311 N.E.2d 253, the reviewing court, in concluding that the State failed to prove the defendant guilty of resisting a peace officer beyond a reasonable doubt, relied in part on the fact that the jury acquitted the defendant of a charge of battery arising out of the same incident. However, the reviewing court in *Clinkscales* also relied on other discrepancies in the State's case, concluding "after a careful examination of the record, that there [was] no satisfactory evidence that defendant resisted arrest." (19 Ill. App. 3d 173, 176, 311 N.E.2d 253, 256.) In the instant case, Officer Lavery testified that when she told defendant he was under arrest, defendant said she could not arrest him without a warrant and tried to put her arm into the deep-fat fryer. When defendant was grabbed by one of the other officers, he struck Lavery, knocking her against the fryer into the wall, and onto the floor. A struggle ensued in which defendant was finally subdued and handcuffed. Lavery's testimony

was corroborated in many respects by the other two officers. Edward Bowers testified that 4 months after the incident defendant told Bowers he had no intention of allowing the police officers to arrest him. The testimony outlined above is surely "satisfactory evidence that defendant resisted arrest," and we will not assume the jury disbelieved it.

A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses, and should not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) The State's evidence in the instant case is not that improbable.

The second argument made by defendant concerns the manner in which the trial court responded to the jury's request for additional instructions. Defendant's argument in this regard has several parts. First, citing *Hunter v. Smallwood* (1975), 28 Ill. App. 3d 386, 328 N.E.2d 344, he contends the trial court erred by failing to consult with counsel prior to responding to the jury's request for further instructions and by giving such instructions orally rather than in writing. Second, he maintains the trial court's responses were incorrect. According to defendant, the jury should have been given sections 102—5 and 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, pars. 102—5 and 107—14) which define "arrest" and set forth under what circumstances a peace officer may stop a person to question him. Finally, defendant acknowledges that none of these arguments were raised in the trial court. He argues, however, that they should be considered pursuant to Supreme Court Rules 451(c) and 615(a) (Ill. Rev. Stat. 1977, ch. 110A, pars. 451(c), 615(a)). In the alternative, he contends that the failure of his appointed trial counsel to make these arguments amounted to ineffective assistance.

In *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, the Illinois Supreme Court recently discussed Rule 451(c) which provides a limited exception to the general rule that errors in jury instructions are waived by failure to object at trial. The court noted that one of the purposes of the general waiver rule is to prevent "a party failing to object to gain the advantage of obtaining a reversal based upon his own failure to act." (75 Ill. 2d 1, 11, 387 N.E.2d 331, 336.) The court stressed the Rule 451(c) exception is a limited exception to be used to correct "grave errors," or to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed. Rule 615(a); which provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court," is to be applied under similar circumstances. See *Roberts*, 75 Ill. 2d 1, 14, 387

N.E.2d 331, 337, and *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

■■ As is evident from our review of the testimony above, the instant case was not particularly close factually. In light of the fact that the jury was otherwise properly instructed, the actions of the trial court in this regard, if in error, were not "grave errors" within the ambit of the rule. Moreover, since the decision not to object might well have been a tactical one, fundamental fairness would not require a reversal. We hold defendant has waived any errors in this regard.

■■ Defendant's alternative contention, that his appointed trial counsel's failure to object amounted to ineffective assistance, is also without merit. Our review of the competency of appointed trial counsel does not extend into areas involving the exercise of judgment, discretion or trial tactics, even though appellate counsel might have acted in a different manner. (*People v. Lewis* (1977), 55 Ill. App. 3d 1022, 371 N.E.2d 672.) A defense counsel's decision how to respond to a jury's request for further instructions is subject to various tactical considerations. In the instant case, defense counsel's response was well within the bounds of appropriate trial strategy.

■■ Defendant's next contention concerns the prosecutor's statement during closing argument that police officers would risk losing their jobs by committing perjury. Defendant did not object to this argument when it was made, and we decline to consider it pursuant to Rule 615(a). As stated above, the instant case was not particularly close factually. The argument, if improper, did not deprive defendant of a fair trial. The jury was instructed that closing arguments are not evidence. Moreover, defense counsel in his closing argument vigorously argued that the officers' testimony was not credible.

■■ Defendant's final contention is that under section 110—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 110—14), he is entitled to a credit of $15 against his $100 fine because he served 3 days in jail before being released on bond. The State agrees that defendant is entitled to the $15 credit, and we so hold. See *People v. Winkler* (1979), 77 Ill. App. 3d 35, 395 N.E.2d 671.

For the reasons stated above, the conviction and sentence entered by the Circuit Court of Peoria County are affirmed except that the sentence is modified to allow defendant a $15 credit against the $100 fine.

Affirmed as modified.

ALLOY, P. J., and STOUDER, J., concur.