THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARLEY BUTLER, Defendant-Appellant.

(No. 71-276;

Fifth District—October 18, 1974.

Robert Farrell, of Mt. Vernon, and Lynn Sara Frackman, of Chicago, both of State Appellate Defender's Office, for appellant.

James G. Gullett, State's Attorney, of Elizabethtown, for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the defendant, Harley Butler, from an order entered by the circuit court of Hardin County denying defendant's petition for post-conviction relief without an evidentiary hearing.

On November 14, 1961, the defendant was found guilty of burglary by a jury in the circuit court of Hardin County, and was sentenced to 10 years to life imprisonment. On October 11, 1965, the defendant filed a *pro se* notice of appeal and motion for leave to appeal which were denied by the Illinois Supreme Court. On September 29, 1966, the defendant filed a *pro se* post-conviction petition in the trial court which was accompanied by a motion that he be allowed to proceed in forma pauperis and that counsel be appointed to represent him in that proceeding. The gist of that petition was that he was denied due process of law in that his trial attorney was prevented by law enforcement authorities from having pretrial interviews with an accomplice who testified for the State at defendant's trial. This accomplice was allegedly held in custody before and throughout the trial. On December 19, 1966, the trial court, without appointing counsel, denied defendant's post-conviction petition and found that the supreme court's dismissal of defendant's motion for leave to appeal was res judicata as to defendant's request for a post-conviction hearing. The defendant appealed the trial court's denial of his post-conviction petition to the Illinois Supreme Court. The supreme court reversed (*People v. Butler* (1968), 40 Ill.2d 386, 240 N.E.2d 592) and remanded for a determination of indigence and, upon a determination of indigence, for the appointment of counsel. The supreme court specifically found that "the post-conviction petition was not barred by our [its] dis-

missal of the untimely attempt to take a *pro se* appeal." (40 Ill.2d at 388, 240 N.E.2d 593.) On January 19, 1971, defendant, with the aid of appointed counsel, filed his supplemental petition for post-conviction hearing in the trial court. Among the added allegations were: that the court-appointed trial counsel acted incompetently; that certain jury instructions were incurably prejudicial; that the sheriff, who testified for the State, was in charge of the jury; and that defendant's sentence of 10 years to life constituted cruel and unusual punishment. The State made a motion to dismiss and, on September 16, 1971, the trial court entered an order granting said motion and denying defendant's supplemental petition witthout an evidentiary hearing. The present appeal is from that dismissal.

The defendant raises six contentions in this appeal; first, that he was denied his right to adequate representation by appointed counsel at his trial; secondly, that the incompetency of his counsel at trial requires that the Post-Conviction Hearing Act "provide a proper vehicle for review of those issues as to which review by direct appeal has been unconstitutionally denied by deprivation of the right to appeal"; thirdly, that the trial court erred in refusing "to recognize that the jury was improperly influenced by its bailiff and that defendant was thereby denied a fair trial"; fourthly, that the sheriff's office impeded the preparation and presentation of a "proper defense"; fifthly, that the defendant's conviction must be reversed "because the jury in returning its verdict of guilt did not presume him innocent and did not find him guilty beyond a reasonable doubt"; and lastly, that the defendant's sentence of 10 years to life imprisonment for the offense of "simple burglary" must be reduced.

■■ The defendant correctly points out that in order to sustain a showing of incompetence of trial counsel sufficient to warrant a reversed conviction, the defendant must clearly establish, (1) actual incompetence by the trial attorney in the performance of his duties, and (2) substantial prejudice, without which the outcome would probably be different. (*People v. Morris* (1954), 3 Ill.2d 437, 121 N.E.2d 810.) The same standard is applicable in a post-conviction hearing. *People v. Stepheny* (1970), 46 Ill.2d 153, 263 N.E.2d 83.

Under the defendant's contention of inadequate representation of counsel he alleges at least seven separate instances of incompetency. The general response of the State to these allegations has been to reiterate the heavy burden placed upon the defendant to show a lack of a fair trial due to incompetence of counsel under the *Morris* test and to suggest that the defendant's appointed counsel committed "at worst, a few minor mistakes." As noted in defendant's reply brief, the State has failed to respond to certain of the alleged instances of incompetency advanced in

defendant's main brief. While the defendant contends that each of the alleged instances of incompetence is sufficient to sustain a finding of inadequate representation of counsel, he also contends that the appointed counsel's defense, "taken as a whole, reglected [*sic*] such incompetence as to preclude the possibility of a fair trial and a finding of innocence." In lieu of a protracted discussion of each of the several alleged instances of incompetency we will address ourselves only to such allegations as are contained in the 1961 record before us.

■■ Our examination of the record of the 1961 trial confirms that the defendant's appointed counsel tendered two jury instructions which included either the term "preponderates" or "preponderance." The first of these instructions, "Defendants' Instruction # 2," read as follows:

"You are instructed that in passing upon the question of the guilt or innocence of the defendants, or either of them, if upon any disputed fact or state of facts the evidence in the case, considered in light of the court's instructions, is evenly balanced, and you are unable to say which way the evidence preponderates, you have no right to give the benefit of doubt to the prosecution, but in such case the finding on such facts or state of facts should be for the defendants."

Although the other instruction, "Defendants' Instruction # 8," was not so egregious an instruction, it also made reference to "the preponderance of evidence." These two instructions evidence an unwarranted and undesirable encroachment upon the reasonable-doubt standard particularly when proffered by one charged with *defending, i.e.*, protecting the rights of, a person accused of a crime. Another instruction tendered by defendant's appointed counsel, "Defendants' Instruction # 5," defined "reasonable doubt." Even prior to defendant's 1961 trial our supreme court had disapproved of instructions defining "reasonable doubt" and had recommended that such instructions be discontinued (*People v. Davis* (1950), 406 Ill. 215, 92 N.E.2d 649; *People v. Casey* (1932), 350 Ill. 522, 183 N.E. 616; *People v. Schuele* (1927), 326 Ill. 366, 157 N.E. 215) since:

"It [reasonable doubt] is a term which needs no definition, and it is erroneous to give instructions resulting in an elaboration of it." (*People v. Schuele*, 326 Ill. 366, 372, 157 N.E.2d 215, 217).

Hence, the proffering, by defendant's appointed counsel, of an instruction defining "reasonable doubt" is another distressing example of his lack of familiarity with criminal procedure.

■■ The record before us reflects not only the foregoing acts of inadequacy by defendant's appointed counsel, but instances where his failure to act manifested his apparent inability to protect the defendant. One such error of omission by defendant's appointed counsel was his

failure to object to "People's Instruction No. 8," wherein the State defined "reasonable doubt" as follows:

> "The court instructs the jury, as a letter of law, that the doubt which the jury is allowed to retain must be a reasonable one. A doubt produced by undue sensibility of the juror in view of the consequence of his verdict is not a reasonable doubt, and a juror is not allowed to create sources or material of doubt by resorting to trivial and fanciful suppositions and remove conjectures as to possible states of fact differing from that established by the evidence. You are not at liberty to disbelieve as jurors if from the evidence you believe as men. Your oath imposes on you no obligation to doubt when no doubt would exist if no oath has been administered."

In view of the cases previously mentioned defendant's appointed counsel should have objected to the above definition as an unnecessary and prejudicial elaboration of the term "unreasonable doubt." Another error of omission occurred when defendant's appointed counsel failed to object to "People's Instruction # 5" which included, among other things, the following sentence,

> "This presumption of innocence is not intended to aid any one who is in fact guilty of crime to escape, but is a humane provision of the law intended, as far as human agencies can, to prevent an innocent person from being convicted."

While giving of this instruction may not have been reversible error at the time of defendant's trial (*People v. Gerold* (1914), 265 Ill. 448, *contra, People v. Scarbak* (1910), 245 Ill. 435), it should have been objected to by defendant's appointed counsel. A more salient error of omission occurred when defendant's appointed counsel failed to submit an instruction on accomplice testimony. Our supreme court has held that the trial court's refusal to give such an instruction is reversible error because of the inherently suspect and damaging nature of accomplice testimony (*People v. Zaransky* (1935), 362 Ill. 76, 199 N.E. 104), and has found error even where a cautionary instruction was given which implied that accomplice testimony, if believed, could be given weight equal to that of other evidence (*People v. Jackson* (1940), 375 Ill. 203, 30 N.E.2d 654; *People v. Millard* (1938), 370 Ill. 214, 18 N.E.2d 211). In the instant case, the testimony of the accomplice, Douglas Clark, was crucial to the State's case, which otherwise was supported only by highly questionable circumstantial evidence. The failure of defendant's appointed counsel to tender an instruction on accomplice testimony is but one more serious indication of such counsel's lack of preparation or infamiliarity with the criminal process.

The cumulative effective of the foregoing instructions tendered by defendant's appointed counsel together with the failure to object to certain of the State's instructions and the failure to tender appropriate and advantageous instructions present a substantial case of inadequacy of counsel, but we need not base our conclusion that the defendant was denied his constitutional right to a fair trial on these findings alone.

■■ The meager representation afforded defendant by his appointed counsel was further frustrated by the trial court's rulings on certain of the objections raised by defendant's counsel. One objection made by defendant's appointed counsel, and overruled by the trial court, pertained to the fact that a prosecution witness, Sheriff Oren Gross, was the bailiff and was in charge of the jury. Although the record is unclear as to how continual or intimate the association between Sheriff Gross and the jury was, such interaction was improper and should have been corrected when called to the attention of the trial court. (*People v. Kawoleski* (1924), 313 Ill. 257, 145 N.E. 203.) The other objection made by the defendant's appointed attorney, and apparently overruled by the trial court, concerned the opportunity to interview the State's principal witness, Douglas Clark, prior to his testimony at trial. The objection was advanced at the defendant's 1961 trial together with his counsel's allegation that the sheriff's office had impeded his preparation for trial by preventing him from interviewing Clark the afternoon previous to defendant's trial. In response to counsel's objection the trial court stated, "Well, I don't know that you have any right to talk to him, other than as a witness, his name was listed as a witness." The witness was then allowed to testify and defense counsel's request was ignored. It is evident that the trial court's indecision resulted in the overruling of counsel's objection and the denial of an opportunity to interview the witness. Subsequently, Richard Brazell, deputy sheriff of Hardin County, testified in response to a question by defense counsel when Clark was placed in the jail prior to being sent to Menard:

"Brazell: Yes, sir, it was on City Council night, I remember telling you not to go back there to where he was.

Flynn: You were under specific orders not to let anyone back there?

Brazell: No sir, I wasn't under specific orders, you had no more right in there anymore than anyone else.

Flynn: You wouldn't let me go talk to him?

Brazell: I don't let nobody go in there fooling with my prisoners at any time.

Flynn: But I did start back to see him and you stopped me?

Brazell: I stopped you, yes sir."

Brazell then testified that Clark was returned to his custody from the penitentiary the day before the trial. He was asked if Clark had been in jail the night before the trial and answered that Clark had been in his possession. When Brazell was asked where Clark was kept, he answered "Where I put him, that is my business." At that point the following occurred:

"Flynn: Your Honor, I request that the witness—

Gullett: What does it make any difference, he is the Deputy Sheriff, he has got him in his custody.

Flynn: My purpose is this Your Honor, I inquired yesterday afternoon and I was told by two police officers that he wasn't in town, that he wasn't in the County—

A. He has been in the County since five minutes after eleven yesterday morning.

Flynn: I don't know who to believe in the matter, one tells you one thing, and someone else tells something else.

The Court: I think he has answered the question, said he has been here since five minutes after eleven yesterday morning.

A: There is another deputy sheriff who will testify to the same thing, another witness."

It thus becomes apparent that defense counsel was frustrated in his efforts to interview the witness Clark. Although, this, in and of itself, may not be within the purview of the Post-Conviction Hearing Act, there can be little dispute that it may be considered in ascertaining whether the defendant was denied his constitutional right to a fair trial.

■■■ It is our conclusion that the cumulative effect of the multitude of errors here present, corroborated by the 1961 record before us, compels us to find that the defendant was denied his constitutional right to a fair trial. In view of this finding the defendant must be granted a new trial. Since our conclusion is confirmed by the record of defendant's 1961 trial, we have, in order to expedite the handling of defendant's case, adopted the unusual procedure of remanding this case for a new trial without the aid of an evidentiary hearing on defendant's supplemental post-conviction petition.

Accordingly, we reverse the order entered by the circuit court of Hardin County denying defendant's request for post-conviction relief and direct that the defendant be granted a new trial.

Reversed and remanded with directions.

G. MORAN, P. J., and CARTER, J., concur.