THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DOUGLAS B. AUSTIN, Defendant-Appellant.

Third District   No. 76-416

Opinion filed August 2, 1977.

Robert Agostinelli and Mark W. Burkhalter, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce Black, State's Attorney, of Pekin (James E. Hinterlong and Robert M. Hansen, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

This appeal was initiated by the defendant, Douglas Austin, from his

convictions of two counts of burglary. Subsequent to the jury trial, the defendant was sentenced to two concurrent terms of imprisonment of from 3 to 9 years.

The defendant was charged by information with two counts of burglary and two counts of felony theft in violation of sections 19—1 and 16—1(a)(1), respectively, of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 19—1, 16—1(a)(1)). A prompt preliminary hearing found probable cause existed. Nevertheless, prior to trial, the defendant moved to suppress evidence taken from his possession or his automobile when he was initially arrested. After hearing the arguments of counsel, the trial court concluded that the police officer had probable cause to arrest the defendant and search his vehicle.

At trial, the State's evidence tended to establish that at approximately 1:50 a.m. on December 10, 1975, an automobile belonging to the defendant was parked at the terminus of a dead end street in a subdivision of Washington, Illinois. A resident of the neighborhood had seen two men get out of the car, go to the trunk and do something there, and then walk into a field. This resident telephoned the police and described the situation.

. Officer Kampmeier of the Washington Police Department went to the scene and maintained surveillance of the vehicle, which she recognized as belonging to the defendant. She testified that she had observed the defendant driving this automobile at about midnight on the same night.

After one hour, Officer Kampmeier was relieved by Officer Marshall who also knew that the car under surveillance belonged to the defendant. In addition, Officer Marshall was aware that the defendant did not live in the area, that the defendant's parents lived about two miles away, that the defendant had a prior burglary conviction and that several burglaries and thefts had been reported in this area during the preceding week.

At approximately 4 a.m., someone walked up to the vehicle, opened and closed the trunk of the car and drove off in the car. Officer Marshall began to follow the vehicle, without turning on his headlights until one-tenth of a mile down the road the vehicle accelerated. This vehicle was then intercepted and stopped by several other police cars, Officer Marshall pulling up behind the vehicle under surveillance.

Officer Siron observed the defendant, who was the person driving the automobile, which had been under surveillance, take a hatchet from his belt and lay it down between the driver's seat and the front door. After the defendant exited the car, he was subjected to a pat search and was asked what he was doing on the dead-end street and where he was going. His respective replies were "nothing" and "nowhere." Officer Marshall, seeing a hatchet, gloves, a ski mask and two pairs of pliers lying on the floorboard of the car, demanded the key to the defendant's trunk and

therein discovered two bottles of liquor, a leukemia collection board, a money bag, some packages of dried beef, and some cigarette lighters. The officer then closed the trunk and placed the defendant under arrest. When the defendant was later searched at the stationhouse, seven checks drawn on the Morton American Legion account were found in his possession as well as a roll·of postage stamps. It was also noted that the defendant was wearing sneakers.

The next morning some chain saws and a box of tools were found in a field near the place where defendant's car had been parked on the dead-end street. Footprints in the snow led from the location of the saws to the back of a nearby Ace Hardware Store as well as from where the defendant's car had been parked to within 35 or 40 yards of the back of the Ace Hardware·Store. One set of the footsteps was made by someone in tennis shoes.

The owner of the Ace Hardware Store testified that when he inspected his store on December 10, 1975, some chain saws were missing. He also stated he did not give anyone authority to remove the saws from the store. The owner's wife testified that her office in the store had been ransacked and that $35 and a roll of postage stamps were missing.

The commander of the American Legion Post in Morton testified that some items were missing from the Post on December 10, 1975. The items included dried beef sticks, cigarette lighters, liquor, and a Leukemia poster. He also noted that the locks were torn off the juke box, and bowling machine, and the cigarette machine. He stated he did not authorize anyone to enter the building on the night of December 9-10, 1975. A tool mark examiner testified that a piece of metal found in the defendant's trunk matched a piece missing from one of the vending machines in the Legion Post.

The defendant testified in his own behalf and admitted having pleaded guilty to a charge of burglary some four years previously. However, he stated he was at a party in Washington which ended at 12:30 a.m. on December 10, 1975. Prior to that time one Mike Davis had borrowed his car but returned to the site of the party at 2:30 a.m. without the defendant's car. Davis told the defendant where his car was located and that it was staked out by the police. Davis and the defendant then walked out to a nearby field where one "Bobby" was and the defendant saw some chain saws on the ground. The defendant got his keys back and walked to his car, opened his trunk, did not see anything unusual, closed the trunk, and got into the car. He saw some blank checks on the seat of the car and put them into his wallet. The defendant denied participation in either burglary.

On rebuttal, the State impeached the defendant's testimony by introducing two statements in which the defendant admitted

participation in the offenses. On surrebuttal, the defendant denied having had a conversation which allegedly resulted in one of the incriminating statements.

The jury returned verdicts of guilty on all four counts, but judgment was entered on only the burglary counts. During the sentencing hearing, the defendant stated the offenses were caused by his drug problem. Nevertheless, the defendant was sentenced to two concurrent terms of imprisonment of from 3 to 9 years.

■■ Several issues are raised by the defendant. Initially the defendant contends that there was a lack of probable cause for his arrest and for the search of his automobile. Probable cause for a warrantless arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to justify a person of reasonable caution to believe that an offense has been committed and that the person arrested has committed the offense. (*People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356.) In the case at bar, the search of the automobile and the discovery of property in the trunk resulted in sufficient probable cause for the arrest of the defendant.

■■ ■ However, evidence discovered as a result of a warrantless search, in the absence of probable cause, is suppressible. (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) A warrantless search of an automobile which is not incident to the arrest is valid if there is knowledge of facts justifying a reasonably prudent person in believing that a crime has been or is being committed and that evidence thereof is contained in the automobile. (*People v. Jones* (1967), 38 Ill. 2d 427, 231 N.E.2d 580.) The rationale underlying this rule of law is that "the car is movable, the occupants alerted, and the car's contents may never again be found if a warrant must be obtained." (*People v. Ehn* (1st Dist. 1974), 24 Ill. App. 3d 340, 352, 320 N.E.2d 536, 545.) "What constitutes 'probable cause' for searches and seizures must be determined from the standpoint of the officer, with his skill and knowledge, rather than from the standpoint of an average citizen under similar circumstances." (*People v. Symmonds* (4th Dist. 1974), 18 Ill. App. 3d 587, 597, 310 N.E.2d 208, 215.) One of the factors which an officer may consider in determining probable cause is the officer's knowledge of a suspect's reputation, in much the same way as knowledge of a suspect's reputation is a practical consideration upon which an officer may properly rely in assessing the reliability of an informant's tip. See *United States v. Harris* (1971), 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075.

■■ From the circumstances surrounding the search of the automobile and the personal knowledge of Officer Marshall a reasonably prudent person would be justified in believing that a crime had been committed and that the evidence was contained in the automobile. As a result, we

find that the trial court did not err in refusing to suppress the evidence seized in the search of the defendant's automobile and in refusing to suppress the evidence seized from the person of the defendant following his arrest.

■■ The second issue raised by the defendant is whether the trial court erred in giving an instruction based on IPI Criminal No. 3.13 at the behest of the State. Such an instruction would limit the jury's consideration of a defendant's prior conviction to its effect on credibility rather than as substantive evidence of guilt. This court has already found that the giving of this instruction at the request of the State is error. (*People v. Gibson* (3d Dist. 1971), 133 Ill. App. 2d 722, 272 N.E.2d 274.) In *Gibson,* the court had already found that the cross-examination of one defense witness as to her drinking problem and a second defense witness as to tavern fights constituted reversible error prior to discussing the instruction issue. As a result, this court stated that the instruction was "prejudicial error," but did not state that it could never be harmless. Where the evidence against the defendant is overwhelming, unless it appears real justice has been denied and another jury is reasonably likely to render a different verdict, such an error will be considered harmless and not reversible error. *People v. Manzella* (1973), 56 Ill. 2d 187, 306 N.E.2d 16. See also *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *Fahy v. Connecticut* (1963), 375 U.S. 85, 11 L. Ed. 2d 171, 84 S. Ct. 229.

We believe the error in the case at bar was harmless due to the overwhelming evidence against the defendant. In any event, the defendant has waived consideration of this issue by failing to make a proper, specific objection to this instruction in the conference on instructions. See *People v. Brown* (2d Dist. 1973), 9 Ill. App. 3d 730, 293 N.E.2d 1.

■■ Thirdly, the defendant argues that it was error for the trial court to require the defendant to proceed to trial before a jury which was aware of sentencing information. The alleged error occurred during voir dire when a potential juror, in response to a question by the trial judge, allegedly indicated that her son, who had been charged with burglary, received a six-month sentence. However, no record was made of the voir dire proceeding. Therefore, this court cannot consider the defendant's contention. *People v. Smith* (1969), 42 Ill. 2d 479, 248 N.E.2d 68; *People v. Turner* (1st Dist. 1976), 35 Ill. App. 3d 550, 342 N.E.2d 158; *People v. Benford* (1st Dist. 1975), 31 Ill. App. 3d 892, 335 N.E.2d 106.

The last issue raised by the defendant is whether the trial court abused its discretion in sentencing by failing to consider the possibility of drug treatment for the defendant pursuant to the Dangerous Drug Abuse Act. (Ill. Rev. Stat. 1975, ch. 91½, par. 120.10.) The State has conceded this issue. Therefore, this cause should be remanded to the trial court for a

determination of whether the defendant should receive the benefit of the Act. See *People v. Myers* (3d Dist. 1976), 36 Ill. App. 3d 458, 343 N.E.2d 613.

Accordingly, the sentences heretofore imposed in this cause are vacated and this cause is remanded to the Circuit Court of Tazewell County for further consideration by that court of whether the defendant should have the benefit of the Dangerous Drug Abuse Act.

Affirmed. Sentences vacated and cause remanded.

STENGEL, P. J., and SCOTT, J., concur.