THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHELDON JAFFE, Defendant-Appellant.

Second District No. 83—1129

Opinion filed January 17, 1986.—Supplemental opinion filed on denial of rehearing June 11, 1986.

842

Terry Sullivan and Nancy J. Nicol, both of Law Offices of Terry Sullivan, Ltd., of Rolling Meadows, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

After a jury trial, defendant Sheldon Jaffe was convicted of the murder of Patricia Dean (Pat) and the attempted murder of Ghazi Dean (Ghazi). On appeal, defendant asserts he was not proven guilty of murder and attempted murder beyond a reasonable doubt, he was deprived of his constitutional right to the effective assistance of counsel, the trial court improperly instructed the jury on a witness' mental history, the trial court improperly restricted the cross-examination of Ghazi, defendant's sentence was not entered in compliance with the requirements of the habitual criminal act, and the judgment order incorrectly states defendant was convicted of two counts of murder. For the reasons expressed in this opinion, we affirm defendant's murder conviction but reverse his attempted murder conviction and remand for a new trial.

Defendant was charged with the murder of Pat and the attempted murder of her husband Ghazi. At trial, Lake County Deputy Sheriff William Bobrowski testified he was dispatched by radio on June 30, 1983, at 12:30 a.m. to a residence with the address of 310 Park Avenue, Wildwood. A reddish-orange Chevy Nova was parked in the driveway. Ghazi met Bobrowski at the front door and told Bobrowski to hurry into the bedroom because Pat was bleeding to death. There, Bobrowski observed a profuse bleeding wound in the victim's head. Pat was taken to the hospital, where she died later of the gunshot wound.

After returning to the living room, Bobrowski noticed on the floor a black-powder-type revolver, a folding knife with the blade open, a camouflaged military-style hat, and a blood stain. Ghazi had some minor scrapes and small lacerations on his hands and arms. Bobrowski observed a bullet hole in the hall closet, a bullet hole in the television set in the living room next to the front door and a bullet hole in the headboard to the bed in the victim's bedroom. The investigation revealed that bullet continued through the exterior wall of the house and through the neighbor's fence.

Detective Ray Lamprich testified that although both the knife and the gun found in the Dean living room were dusted for fingerprints, neither provided suitable prints for comparison purposes. Lamprich observed no signs of forced entry into the residence.

The testimony of Ghazi and defendant presented two very different versions of the events surrounding Pat's death. Ghazi testified that he married Pat in 1979 and lived with Pat and her two daughters first at Pat's home in Gages Lake, and later in February 1983, the family moved to the Park Avenue residence in Wildwood.

Defendant lived with the Deans from 1982 until June 26, 1983. He was asked to move because defendant came home drunk every night.

On the morning on June 29, 1983, defendant came to the Dean residence to inquire about repayment of $200 defendant had loaned to Pat several weeks earlier. Defendant left and returned to the Dean residence between 5 p.m. and 6 p.m. and again demanded the $200. After Ghazi assured defendant that Pat would pay him, defendant left. Later that evening after Pat was asleep, Ghazi took Dilatin, Lithium and Valium prescribed by his doctor, locked the door and went to bed. Ghazi took these drugs to prevent further damage to his brain, which was injured in a truck accident. Ghazi was awakened with Pat saying, "No, Monty. No, no Monty". Monty was defendant's nickname. Ghazi heard one shot, and then another and observed defendant holding the barrel of the gun toward him. Leaping up, Ghazi grabbed the gun and another shot was fired. Ghazi and defendant wrestled into the hallway and eventually into the living room. When defendant reached for a knife in a sheath, Ghazi grabbed defendant by the throat, wrestled him to the ground and jumped on top of him. Ghazi beat defendant until defendant was unconscious.

After calling for an ambulance and the police, Ghazi returned to the living room and observed that defendant was gone. While waiting for the police to arrive, Ghazi went into the bathroom, wiped blood from his body with paper towels which he deposited in the bathroom garbage can, vomited, and then got dressed. As part of defendant's case in chief, Ghazi admitted he and Pat argued frequently and admitted he had on previous occasions struck his wife. He also stated everyone knew Pat was "a bitch" about money.

Defendant testified he first met Pat in 1979 at a work release center where both he and Pat were confined. While living with the Deans at both the Gages Lake and Wildwood residences, defendant witnessed numerous arguments between Pat and Ghazi and heard Pat and Ghazi discussing setting fire to the Gages Lake residence, which ultimately did burn to the ground on February 9, 1983. Defendant admitted he had argued with Pat about the $200 loan, but stated Pat and he had agreed to repayment of the loan on July 5, 1983.

Defendant offered testimony on the events surrounding Pat's murder. After drinking some beer at his mother's house on June 29, 1983, defendant went to the Dean home, left there about 2:30 p.m. and drove to Gages Lake where he drank beer in his car. Running

out of beer, he went to the Firehouse Pub in Gages Lake and did not return home to Skokie until 7 p.m. From Skokie, he called Ghazi and asked if he wanted to meet him at the Firehouse Pub. Ghazi declined, and defendant then received permission from Ghazi to stay at the Dean residence that night. He left Skokie at 10 or 10:15 p.m. and drove to the Firehouse Pub. Once there, he drank beer, played pool with Rich Tokarz, and cashed a check. Because he didn't feel well, he drove his car one block from the Firehouse Pub and took a nap for 20-30 minutes. At approximately 12 to 12:15 a.m., he then walked back to the Firehouse Pub, leaving his army fatigue hat in his car, and cashed another check at the Firehouse Pub. He walked back to his car and then drove to the Dean residence. Arriving at 12:30 a.m., he knocked on the front door and hearing no response, turned the handle, opened the front door and confronted Ghazi in the living room. Ghazi was naked, was "kind of wild-eyed," was holding a pistol in his right hand and said to defendant, "Okay, fucker." Defendant lunged for the gun, and during the ensuing struggle, the gun discharged three times. as a result of either being struck by a bullet or Ghazi, defendant was knocked unconscious. Awakening after several minutes, defendant jumped up off the floor, fled down the street, and spent the rest of the night under an evergreen tree one block from the Dean residence. The next morning, he looked for but did not see his car, so he walked to a Foremost Liquor Store and asked the manager, Les Card, to call a cab for him. He then was driven to Skokie, where he was arrested by Lake County sheriff's officers.

Numerous other witnesses testified, and their testimony will be recounted as necessary to resolution of the issues presented. At the conclusion of the trial, the jury returned verdicts of guilty on the charges of murder, attempted murder, aggravated battery, armed violence and home invasion. The trial court vacated the aggravated battery, armed violence and home invasion convictions as lesser included offenses and merged the two counts of murder. Defendant was sentenced to two concurrent terms of natural life imprisonment. On December 19, 1983, defendant filed a post-trial motion, the trial court denied that motion, and defendant filed his notice of appeal.

■ Defendant first asserts that he was not proven guilty beyond a reasonable doubt of the murder of Pat and the attempted murder of Ghazi. The function of the trier of fact is to determine the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 298.) Where the evidence is conflicting, a

court of review will not substitute its judgment for that of the trier of fact. (63 Ill. 2d 296, 298-99.) A conflict in the evidence does not establish a reasonable doubt, and a jury verdict based on substantial and credible evidence is not rendered reversible by the fact that other evidence was introduced which might, if believed, have resulted in a different verdict. (*People v. Kelly* (1956), 8 Ill. 2d 604, 615, *cert. denied* (1957), 353 U.S. 966, 1 L. Ed. 2d 915, 77 S. Ct. 1050.) Only where the record leaves the reviewing court with a grave and substantial doubt of guilt should the conviction be reversed. *People v. Lindsey* (1979), 73 Ill. App. 3d 436, 392 N.E.2d 278.

 Our review of the evidence convinces us that the evidence is not so improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. The record contains substantial evidence that defendant was angry with Pat about her refusal to repay the $200 loan. According to Denise Lund and James Giovenco, both of whom knew the Deans and defendant and lived fairly near the Dean residence, defendant and Pat fought over the loan during the two-week period preceding her death. Tracy Anderson, who lived with the Deans for a period of time, testified she received a telephone call from defendant on June 29, 1983, in which defendant stated he and Pat had been fighting and that he could not remain friends with Pat. Richard Tokarz stated he spoke with defendant at the Firehouse Pub at approximately 11 p.m. on June 29, 1983, and that defendant told him then that he was angry with Pat and was going to drop Ghazi and Pat from his automobile insurance policy the next day. Defendant himself admitted that several weeks prior to the murder, the Deans and he had agreed that he should move out of the Dean household. Defendant also was aware that although Pat refused to pay defendant, she had more than enough money in the bank to repay the debt. Denise Lund testified that on the day prior to the murder Ghazi was trying to get defendant to make amends with Pat. From this testimony, the jury could have found that defendant had a motive to murder Pat.

The jury could also have disbelieved defendant's explanation of the events on June 29, 1983. His version was that at approximately 10:15 p.m. on that evening he left his mother's residence in Skokie and drove to the Firehouse Pub in Gages Lake. After playing pool with Richard Tokarz and drinking beer, he left the pub and drove one block away, parked the car and "caught a catnap." After 20 or 30 minutes, he awoke and walked back to the pub, leaving his hat in his car, cashed a check for $5 and paid for a beer. He then walked

back to his car and drove to Pat's residence. Following the fight with Ghazi, he ran down the block and spent the night underneath an evergreen tree. The next morning he looked for his car, did not see it, and then walked to the Foremost Liquor Store where he called a taxi. Defendant denied returning to the pub after the fight with Ghazi and denied calling James Giovenco after midnight at the hospital where Giovenco was a patient.

The testimony of other witnesses contradicted defendant's version. Both Tokarz and Beverly Douglas, owner of the Firehouse Pub, testified defendant was at the bar about 11 or 11:10 p.m. on June 29, 1983. However, both also testified defendant returned to the pub after midnight. Tokarz stated he saw defendant in the pub at approximately 12:40 or 12:50 a.m. and "[h]e seemed like he was in a hurry." Douglas was even more definite that defendant entered the pub at 12:45 a.m. on June 30, 1983. She recalled the time because her bartender asked to work until 2 a.m. and Douglas came down to the bar from her upstairs apartment to determine if enough customers were there to warrant extending the bartender's shift. As soon as she entered the bar, defendant came in without his hat. Defendant was "uptight" and asked for a beer. Defendant cashed a check with Douglas for $5 and had a hard time writing out the check because his hands were shaking. Defendant used a telephone twice and then left the bar at 1:20 a.m. James Giovenco testified that while a patient at St. Joseph's Hospital, he received a telephone call from defendant in the early morning of June 30, 1983, in which defendant told Giovenco that he was sorry he wasn't going to be able to see Giovenco anymore. From these facts, the jury could have disbelieved defendant's version that he did not return to the pub after the incident, but rather hid behind the tree all night. The conflicting testimony permitted the jury to conclude that defendant was not being truthful regarding the events of June 29-30, 1983.

The jury also could have considered the different versions of the incident offered by defendant to various individuals as impairing defendant's credibility. According to Les Card, manager of the Foremost Liquor Store in Wildwood, defendant came into the store after 6 a.m. on June 30, 1983, looking like he had been in a bad fight. Defendant explained his condition by stating he had been involved in a fight outside of a bar in Gages Lake. Ralph Schwartz, a detective in the Lake County sheriff's office, testified he was involved in taking defendant into custody in Skokie on the morning of June 30, 1983. Defendant told him and Detective Lamprich that he did not have any recollection of shooting Pat, that he was an alcoholic who

suffered blackouts, and that he remembered leaving Skokie on June 29, and returning on June 30, but remembered nothing in between those times. Later on June 30, defendant told Nurse Collette Rolling at the Lake County jail that he couldn't remember how he received his injuries because he blacked out. However, in his testimony at trial, defendant was able to remember all the events which transpired on June 29-30, 1983. The jury could have inferred that defendant's different statements regarding his recollection of the events on the night of the murder rendered his testimony unworthy of belief.

■ Defendant's reasonable doubt argument is predicated almost entirely on attacking the credibility of Ghazi. Although emphasized by defendant, we do not find significant the inconsistent testimony on whether Ghazi went to the hospital in the ambulance with his wife. Also, any conflict between Ghazi's testimony that brain matter splattered around the room and the paramedic's testimony that he did not observe any brain matter is not significant because the jury could have concluded that the blood splattered on the wall of the bedroom was mistaken by Ghazi to be brain matter. Defendant raises certain inconsistencies between Ghazi's testimony and that of Kenneth Sweetwood, Ghazi's next-door neighbor. However, according to Charles Fagan, detective of the Lake County sheriff's department, Kenneth Sweetwood, on the morning of the incident, did not tell Fagan that he heard a woman's voice say "No, don't" prior to the first gunshot and did not tell Fagan that he heard a conversation regarding insurance money. Therefore, the jury could have disbelieved the trial testimony of Kenneth Sweetwood based upon his failure to offer this information to Fagan during the investigation on the morning of the murder.

Defendant emphasizes that Ghazi cannot be believed because of his brain injury. Dr. Ronald Baron, a psychiatrist, testified he examined Ghazi on May 24, 1982, and May 23, 1983, in connection with Ghazi's social security disability hearing. As a result of a 1980 truck accident, Ghazi suffered from a chronic organic brain syndrome. Ghazi's symptoms included "irritability, headaches which awakened him from a sound sleep, nervousness, episodes of violence, noise intolerance, intolerance to heat, and decreased tolerance to alcohol." He experienced seizures resulting from the accident for which he was prescribed Dilantin. Prior to Baron's examination, Ghazi had experienced rage attacks and had struck Pat and one of his stepchildren. Additionally, Ghazi suffered a memory deficiency as a result of the accident resulting in an inability to remember the specific details

of an event, but he was capable of remembering major events and the names of people with whom he commonly was in contact. Baron testified his diagnosis of Ghazi conflicted with that of another doctor, who had concluded that Ghazi's ability to think was impaired to a lesser extent. From this testimony, the jury could have concluded that Ghazi was able to accurately recall the major events on June 29-30, 1983, despite his potential for confusing the particular details of that night. Ghazi's brain injury does not undermine his credibility sufficiently to raise a grave and substantial doubt of defendant's guilt.

Defendant also emphasizes the inconsistencies between Ghazi's testimony that he vomited in the toilet and threw bloodied paper towels in the bathroom trash can after his fight with defendant and Bobrowski's testimony that in his investigation of the bathroom he found no bloodied paper towels in the bathroom garbage can and found no evidence of vomiting in the bathroom. The jury could have inferred that Bobrowski found no evidence of vomit because Ghazi flushed the toilet. While Ghazi's testimony that he threw the towels in the garbage can is inconsistent with Bobrowski's search of the bathroom, the jury could have concluded this inconsistency was insignificant in light of the inconsistencies in defendant's version of the events on June 29-30, 1983. Our review of the record does not leave us with a grave and substantial doubt of the guilt concerning defendant's commission of the murder of Pat and attempted murder of Ghazi.

Defendant next contends he was deprived of the effective assistance of counsel because his attorney did not raise the affirmative defense of voluntary intoxication, and failed to request instructions on the defenses of voluntary intoxication and self-defense. To establish he was denied the effective assistance of counsel, defendant must prove that his representation fell below an objective standard of reasonableness and his attorney's shortcomings were so serious as to deprive him of a fair trial. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.) Defendant must establish both components of the test; reasonable representation is determined based upon all of the circumstances. *People v. Barnard* (1984), 104 Ill. 2d 504, 526-27.

Defendant argues the evidence established that he was so intoxicated that he lacked the necessary specific intent to commit murder or attempted murder. We cannot conclude that the strategy

of defendant's attorney to present the jury with defendant's version of the facts and to then attack Ghazi's credibility based upon his mental history and his ingestion of drugs amounts to ineffective assistance of counsel. Defendant's defense to the attempted murder charge was self defense, and his defense to the murder charge was he did not kill Pat and never entered her bedroom on the morning of her murder. Defendant's counsel could reasonably have concluded that these defenses were best presented through defendant's specific and precise recollection of the events on June 29-30, 1983. Were defendant to rely upon the voluntary intoxication defense, which requires intoxication so extreme as to entirely suspend the power of reason or to render the defendant wholly incapable of forming the requisite intent to commit the crime (*People v. Crosser* (1983), 117 Ill. App. 3d 24, 28, 452 N.E.2d 857, 862; Ill. Rev. Stat. 1983, ch. 38, par. 6—3), defendant could not credibly testify in specific detail as to what his actions were on the night and morning in question. Therefore, defense counsel's decision to not raise the affirmative defense of voluntary intoxication or to tender instructions on that defense relative to the murder and attempted murder offenses was a valid trial tactic. See, *e.g., People v. Barrentine* (1985), 112 App. Div. 2d 440, 441, 492 N.Y.S.2d 100, 101 (no ineffective assistance of counsel where "[i]n view of the inconclusive evidence of defendant's intoxication, coupled with his admission that he had not been drunk, the decision of defendant's trial counsel to rely strictly on the defense of justification, and to forego a possible intoxication defense, appears to have been an entirely valid trial tactic").

Moreover, defendant has not established prejudice, because the record suggests defendant was not so intoxicated that a reasonable probability exists the results of the proceeding would have been different. While defendant testified that he suffered a blackout concerning the events that evening, Tokarz stated that at 11 p.m. he had a conversation with defendant and played pool with defendant. Beverly Douglas testified that when defendant entered her pub at 12:25 a.m. on June 30, 1983, he had "a little too much to drink". Giovenco testified he couldn't tell if defendant was intoxicated during his phone call in the early morning of June 30, 1983, because defendant could hold his liquor well. Les Card, who saw defendant later that morning, testified he couldn't really tell whether defendant had been drinking. According to defendant's own testimony, he had approximately 15 beers the entire day, but he had consumed approximately 11 beers prior to returning to Skokie at 7 p.m. He then had the foresight to telephone Ghazi and ask if he could stay at the

Dean residence that evening if he "was too drunk to drive back to Skokie." After walking his dog, defendant then drove back to Gages Lake, which was 25 miles from Skokie. Ghazi's testimony that defendant was intoxicated at 6 p.m. on June 29 does not establish that he was intoxicated six hours later when Pat was killed. This evidence convinces us that defendant was not prejudiced by his counsel's decisions not to raise the affirmative defense of voluntary intoxication or request instructions on the defense because the evidence suggested he was not intoxicated to the degree which would negate the specific intent necessary for murder and attempted murder. See *Keys v. Duckworth* (7th Cir. 1985), 761 F.2d 390 (despite testimony that the defendant was extremely intoxicated, prejudice prong of incompetence claim concerning counsel's failure to investigate voluntary intoxication defense was not satisfied where other facts in record established that no reasonable probability existed that failure to investigate affected outcome of trial).

■ We find merit, however, in defendant's claim that his counsel was ineffective by failing to tender any self-defense instructions to the jury. Without citation to authority, the State justifies the absence of self-defense instructions by interpreting the evidence as failing to establish any basis for such an instruction because defendant was not in any actual danger. Self-defense is an affirmative defense which, when raised, must be disproved by the State beyond a reasonable doubt. (*People v. Estes* (1984), 127 Ill. App. 3d 642, 651, 469 N.E.2d 275, 282.) To establish this defense, the defendant must show that unlawful force was threatened against him, that he was not the aggressor, that the danger of harm was imminent, that the use of force was necessary to avert the danger, and that the amount of force used was justified. (*People v. Jordan* (1985), 130 Ill. App. 3d 810, 474 N.E.2d 1283.) Even a slight amount of evidence is sufficient to raise the issue of self-defense (*People v. Bailey* (1982), 108 Ill. App. 3d 392, 439 N.E.2d 4) and will justify giving an instruction on self-defense to the jury. *People v. Bratcher* (1976), 63 Ill. 2d 534, 540.

Defendant testified he received permission from Ghazi to spend the night at the Dean residence and arrived there sometime after midnight. After knocking on the front door, defendant let himself in and entered the semidark living room. There, he was confronted by a wild-eyed Ghazi, who "was holding a pistol in his right hand" and who addressed the defendant with the words, "Okay fucker." Ghazi pointed the gun at defendant, who then lunged for the gun. A fight ensued which resulted in defendant losing consciousness for several

minutes. After awakening groggy and in pain, defendant ran for his life. Contrary to the State's characterization, this testimony, if believed, adequately raised the self-defense issue and would have justified instructions on that defense if requested by defendant.

Under the circumstances of this case, failure to request self-defense instructions constitutes ineffective assistance of counsel. Our review of the record indicates self-defense was the only defense raised by defendant to the attempted murder charge. Defendant admitted being at the Dean home in the early morning hours of June 30 and admitted fighting with Ghazi. Because self-defense was the sole defense to the attempted murder charge, counsel's failure to tender any instructions on the defense was unreasonable considering all the circumstances. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; see *People v. Berry* (1982), 111 Ill. App. 3d 487, 444 N.E.2d 593, *aff'd on other grounds* (1984), 99 Ill. 2d 499 (new trial required where counsel was ineffective in part by failing to tender burden of proof instructions on self-defense); *People v. Butler* (1974), 23 Ill. App. 3d 108, 318 N.E.2d 680 (failure of attorney to submit instruction on accomplice testimony combined with other errors amounts to incompetent representation); *State v. Talley* (N.M. App. 1985), 103 N.M. 33, 702 P.2d 353 (failure to tender proper instruction on defense of inability to form specific intent plus other errors constitutes ineffective representation necessitating reversal); *Grooms v. State* (S.D. 1982), 320 N.W.2d 149 (new trial required where counsel failed to request a precautionary jury instruction on accomplice testimony and failed to file a timely notice of appeal); *State v. McBride* (S.D. 1980), 296 N.W.2d 551 (new trial required where counsel failed to request a limiting instruction on accomplice testimony); *Commonwealth v. Fisher* (1985), 342 Pa. Super. 544, 493 A.2d 719 (new trial required because of ineffective assistance of counsel where attorney failed to request instruction on the significance of prior violent acts relative to justification defense); *Commonwealth v. Brunner* (1985), 341 Pa. Super. 64, 491 A.2d 150 (new trial required where counsel was ineffective by failing to request an instruction on alibi witness testimony where an alibi witness was his only witness).

Counsel's failure here to offer instructions cannot be explained on the basis of a trial strategy. (See, *e.g., People v. Barnard* (1984), 104 Ill. 2d 218 (failure to tender self-defense instruction in murder prosecution, which would have required that an instruction on voluntary manslaughter also be given, not ineffective assistance where defense strategy was to present jurors with only the options of finding

defendant guilty or not guilty of murder); *People v. Johnson* (1978), 63 Ill. App. 3d 745, 380 N.E.2d 531 (failure to offer voluntary intoxication instruction made for tactical reasons and therefore not ineffective assistance of counsel); *People v. Pulley* (1973), 11 Ill. App. 3d 292, 296 N.E.2d 373, *rev'd on other grounds* (1974), 58 Ill. 2d 171 (election of counsel not to tender a self-defense instruction on the facts of that case was a trial tactic and therefore not incompetence).) While counsel's failure to tender self-defense instructions in *Barnard* was justified as a tactic to exclude from the jury's consideration the compromise offense of voluntary manslaughter, no compromise offense of attempted voluntary manslaughter exists. (See *People v. Reagan* (1983), 99 Ill. 2d 238.) Therefore, no tactical explanation exists for counsel's failure to tender self-defense instructions to the jury. Moreover, our review of the evidence demonstrates that the failure to offer self-defense instructions cannot be justified on the basis that the evidence did not warrant tendering such instructions. (Compare *People v. Gallardo* (1983), 112 Ill. App. 3d 764, 445 N.E.2d 1213.) Nor can counsel's failure be explained on the basis that the substance of the omitted instruction was provided to the jury by argument of counsel (*People v. Pangburn* (1976), 41 Ill. App. 3d 781, 354 N.E.2d 152) or by other jury instructions (*People v. Smith* (1972), 7 Ill. App. 3d 912, 288 N.E.2d 901; *United States ex rel. Huckstead v. Greer* (7th Cir. 1984), 737 F. 2d 673, 677). We therefore conclude counsel's conduct fell "outside the wide range of professionally competent assistance." *Strickland v. Washington* (1984), 466 U.S. 668, 690, 80 L. Ed. 2d 674, 695, 104 S. Ct. 2052, 2066.

■ A finding of incompetence also requires that the defendant have been prejudiced by his attorney's action or inaction. The defendant bears the burden to establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." (*Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) In *People v. Berry* (1982), 111 Ill. App. 3d 487, 444 N.E.2d 593, *aff'd on other grounds* (1984), 99 Ill. 2d 499, the court found that the failure of the defendant's attorney to tender Illinois Pattern Jury Instruction, Criminal, No. 25.05 (which explains the State's burden to prove that the defendant's actions were not justified) in addition to other errors "produced substantial prejudice to defendant without which the result of the trial would probably have been different." (*People v. Berry* (1982), 111 Ill. App. 3d 487, 493, 444 N.E.2d 593, 597.) On appeal, the supreme

court expressly refused to reach the ineffective assistance of counsel claim, instead concluding that the trial court's failure to give Illinois Pattern Jury Instruction (IPI), Criminal, No. 25.05 (1st ed. 1968) constituted plain error. (*People v. Berry* (1984), 99 Ill. 2d 499, 507.) The reasonable probability of prejudice is even greater in the case at bar for in *Berry*, the jury did receive IPI Criminal No. 24.06 defining when force is justified in defense of a person while here, no self-defense instructions were tendered to the jury.

■ Defendant testified he used force to protect himself, grabbing the gun after Ghazi had pointed it at him. Defendant also testified he ran for his life once he awoke, thus demonstrating he was afraid of Ghazi. The jury was instructed that it could find defendant guilty of attempted murder if it found that when defendant performed the acts constituting a substantial step toward the commission of the offense of murder, he (1) intended to kill; (2) intended to do great bodily harm, or (3) knew that such acts created a strong probability of death or great bodily harm. Even if the jury believed defendant's testimony, the jury could have found him guilty of attempted murder on the basis that defendant knew that grabbing a gun and wrestling with the gunman created a strong probability of great bodily harm to the gunman. Absent instructions on self-defense, the conviction would result even if the jury concluded that defendant reasonably believed such force was necessary to prevent imminent death or great bodily harm to defendant. (See Ill. Rev. Stat. 1983, ch. 38, par. 7—1.) Had the jury received proper self-defense instructions, however, the jury, if it believed defendant's testimony, would have acquitted defendant of the attempted murder charge. Because the direct testimony concerning the facts resulting in the attempted murder charge was offered exclusively by Ghazi and defendant, we conclude a reasonable probability exists that the jury would have returned a different verdict had they been instructed on the affirmative defense of self-defense. Accordingly, we conclude defendant's counsel, while presenting a vigorous defense in most respects, was incompetent in failing to request instructions on self-defense after eliciting testimony supporting this defense during the trial. Defendant's conviction for attempted murder must therefore be reversed.

■ Our conclusion that defendant's counsel was ineffective is supported by our review of the attempted murder instructions. Although not raised by defendant either at trial or to this court, the attempted murder instructions are erroneous. The jury in the case at bar received the following instructions.

"A person commits the crime of attempt when he, with intent to commit the offense of murder, does any act which constitutes a substantial step toward the commission of the offense of murder.

The offense attempted need not have been committed.

To sustain the charge of attempt, the State must prove the following propositions:

First: That the defendant performed an act which constituted a substantial step toward the commission of the offense of murder; and

Second: That the defendant did so with intent to commit the offense of murder.

A person commits the offense of murder when he kills an individual if, in performing the acts which cause the death,

he intends to kill or do great bodily harm to that individual or another; or

he knows that such acts create a strong probability of death or great bodily harm to that individual or another."

In considering attempted murder instructions virtually identical to those here, the supreme court in *People v. Harris* (1978), 72 Ill. 2d 16, concluded that such instructions constituted plain error because they erroneously permitted the jury to convict a defendant of attempted murder on a lesser mental state than a specific intent to kill. The same infirmity exists with the instruction here. In fact, the error is more egregious, because in addition to permitting the "intends to do great bodily harm" mental state ruled improper in *Harris*, the murder instruction here also permitted the jury to convict if defendant's action created a strong probability of death or great bodily harm.

The improper attempt instructions are significant for two reasons. First, as in *Harris*, plain error exists where instructions permit the jury to find a defendant guilty of attempted murder on a mental state other than a specific intent to kill. (See *People v. Daniel* (1984), 125 Ill. App. 3d 694, 466 N.E.2d 662.) Because the evidence with regard to defendant's mental state once inside the Dean residence is closely balanced (Ghazi's version vs. defendant's version), this case is distinguishable from *People v. Roberts* (1979), 75 Ill. 2d 1, where when presented with erroneous attempted murder instructions, the court refused to find plain error because the evidence was not closely balanced. Second, the erroneous instructions reinforce our conclusion that defendant was prejudiced by the ineffectiveness of his counsel. Accordingly, we reverse defendant's con-

viction for attempted murder and remand for a new trial.

██ Defendant next asserts that the trial court erred in instructing the jury that "a witness's mental history is to be considered by you only insofar as it affects his believability." Defendant claims error on two grounds: the instruction (1) singled out the testimony of an individual witness; and (2) improperly informed the jury that it could not consider the impact of Ghazi's head injury and medication on his ability to perceive and recall.

The first objection was not raised in the trial court or in defendant's post-trial motion and could be considered waived for purposes of review. (*People v. Austin* (1977), 50 Ill. App. 3d 1012, 366 N.E.2d 135; *People v. Brown* (1973), 9 Ill. App. 3d 730, 293 N.E.2d 1.) In any event, we reject defendant's contention that the instruction was improper as singling out the testimony of a particular witness. Instructions concerning the credibility of witnesses are cautionary, and the trial court has discretion in deciding whether to tender such instructions. (*People v. Thorns* (1978), 62 Ill. App. 3d 1028, 1031-32, 379 N.E.2d 641, 644.) The trial court tendered Illinois Pattern Jury Instruction (IPI), Criminal, No. 1.02 (2d ed. 1981), which states that the jury is the sole judge of the believability of the witnesses. In the Committee Note to IPI Criminal 2d No. 1.02, the Committee acknowledges the possibility that the facts of a particular case may warrant instructing the jury on additional factors. (IPI Criminal 2d No. 1.02.) In the case at bar, Ghazi's testimony was important to the State's prosecution, and the record contained evidence of Ghazi's mental illness. We therefore find no abuse of discretion in the trial court's decision to instruct the jury to limit its use of the evidence of a witness' mental history to its determination of that witness' believability.

██ Defendant's remaining argument concerning the instruction is predicated on his interpretation of the term believability as excluding the components of memory and perception. His interpretation is contradicted by the language of IPI Criminal 2d No. 1.02 concerning the credibility of witnesses which, as we have previously noted, was tendered to the jury in the instant case.

"You are the sole judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case.

You should judge the testimony of the defendant in the same

manner as you judge the testimony of any other witness."
This instruction clearly includes as elements of believability the witness' memory and perception. Therefore, the mental history instruction when read with the above instruction did not preclude the jury from considering Ghazi's memory and ability to perceive and thus, defendant's challenge to the instruction is without basis.

■■ Defendant next asserts the trial court improperly restricted his cross-examination of Ghazi. Specifically, defendant complains of State objections which were sustained as to three questions: (1) was Ghazi satisfied with receiving $2,000 of the $16,000 in insurance proceeds received by Pat as a result of the fire at her Gages Lake residence; (2) whether Ghazi told anyone that he had more than $2,000 coming to him from the insurance proceeds; and (3) where did Ghazi go on the date of Pat's funeral. As the State recognizes, defendant's failure to raise this issue in his post-trial motion constitutes a waiver. *People v. Pickett* (1973), 54 Ill. 2d 280.

Even were this issue not waived, at most defendant has highlighted errors which are harmless beyond a reasonable doubt. As defendant acknowledges, the scope of cross-examination is generally within the trial court's discretion. (*People v. Barr* (1972), 51 Ill. 2d 50.) The trial court's ruling will not be disturbed on review unless there has been some clear abuse of discretion resulting in manifest prejudice to the defendant. (*People v. Lenard* (1979), 79 Ill. App. 3d 1046, 398 N.E.2d 1054.) Evidence of bias must not be remote or uncertain because it must potentially give rise to the inference that the witness has something to gain or lose by his testimony. (*People v. Foley* (1982), 109 Ill. App. 3d 1010, 441 N.E.2d 655.) Even if there is an error in restricting the scope of cross-examination, it will rise to the level of reversible error only if the defendant manifestly suffered prejudice as a result. (*People v. Crosser* (1983), 117 Ill. App. 3d 24, 452 N.E.2d 857.) The error is harmless unless a reasonable doubt exists that the restriction could have contributed to the defendant's conviction. *People v. Rogers* (1985), 135 Ill. App. 3d 608, 482 N.E.2d 639.

■■ Defendant asserts he was trying to establish Ghazi's bias by pursuing his theory that Ghazi killed Pat because he failed to receive any of the insurance proceeds from the alleged arson. Defendant's question to Ghazi whether he was "satisfied" with the $2,000 he received from Pat's daughter after Pat's death is not related to whether he was angry at Pat for retaining all of the insurance money for herself. Moreover, Ghazi did testify that he received $2,000 from Pat's daughter, so any error in sustaining the State's objection to the question about Ghazi's satisfaction with the amount is harmless beyond a

reasonable doubt. According to defendant's trial counsel, the question concerning Ghazi's satisfaction with the $42,000 amount was asked because of a statement Ghazi allegedly made to Jack Anderson, Pat's former husband, after Pat's death. While the trial court did not abuse its discretion in sustaining the State's objection to this question, we note that any error would be harmless because Ghazi in the offer of proof answered that he did not remember ever making such a statement to Anderson. Finally, the trial court did not abuse its discretion in sustaining the State's objection to the question regarding Ghazi's whereabouts on the date of Pat's funeral. Such a question has only a tangential relationship to any possible bias of Ghazi. Also, the jury did hear Ghazi testify that he did not go to Pat's funeral. Therefore, we fail to see any significant additional bias which would be established by Ghazi's testimony regarding where he was on the day of Pat's funeral. Accordingly, we find no reversible error resulting from the trial court's rulings sustaining the State's objections to these three questions.

■■ Defendant next asserts he is entitled to a new sentencing hearing because the trial court failed to comply with the requirements of section 33B—2(a) of the habitual criminal act. (Ill. Rev. Stat. 1983, ch. 38, par. 33B—2(a).) Specifically, defendant contends the trial court erred by accepting as evidence of his prior convictions the recitation of his offenses contained in the presentence report instead of requiring certified copies of his prior convictions to be introduced by the State. Also, defendant asserts the trial court did not advise him of his statutory right to a hearing and did not conduct such a hearing.

Our review of the sentencing hearing reveals that defendant's counsel stated that both he and defendant had read the presentence report and that defendant found the report "substantially correct" and needed no significant corrections or additions. After the State argued that this case was appropriate for a life sentence pursuant to section 33B—2(a), the defendant's counsel argued only that a life sentence under the statute was not mandatory and that defendant maintained his innocence concerning the murder and attempted murder offenses. Defendant specifically declined to say anything on his behalf. Therefore, defendant's arguments raised now for the first time on appeal are waived. Additionally, we emphasize defendant does not assert that any of his convictions contained in the presentence report are inaccurate in any respect. Any error in failing to hold a separate hearing, therefore, would be harmless.

■■ Defendants asserts and the State agrees that the order of judgment and sentence signed by the court on December 19, 1983, in-

correctly states that defendant is guilty of two counts of murder because the two counts of murder merge into one conviction. We therefore direct that the order be modified to reflect defendant's conviction for one count of murder.

Defendant's conviction for murder is affirmed, but defendant's conviction for attempted murder is reversed and remanded for a new trial.

Affirmed in part, reversed in part and remanded.

NASH, P.J., and SCHNAKE, J., concur.

SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

Both the State and defendant have filed petitions for rehearing. The State requests rehearing solely to present argument regarding that portion of our opinion which reversed defendant's attempted murder conviction on the basis that his counsel was ineffective in failing to tender self-defense instructions to the jury. Specifically, the State argues that this court's affirmance of defendant's murder conviction requires the conclusion that no jury on retrial could acquit defendant of the attempted murder charge and thus, no prejudice to defendant resulted from his trial counsel's failure to submit self-defense instructions.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that (1) counsel's representation "fell below an objective standard of reasonableness" and (2) there is a reasonable probability—a probability which is sufficient to undermine confidence in the outcome but which need not be proof by a preponderance of the evidence—that "but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2065, 2068.) As the State itself acknowledges, defendant offered no testimony regarding the murder of Pat which the evidence suggested occurred in the bedroom. In finding defendant guilty, the jury could have believed at least some of Ghazi's testimony and could have considered other evidence in the record concerning the events in the bedroom.

The attempted murder charge, however, was based upon different facts which occurred in a different room of the house. The fight between Ghazi and defendant, which was acknowledged by both in their testimony, occurred in the living room. Based upon defendant's testi-

mony that he struggled with Ghazi in self-defense, the jury could have concluded that a reasonable doubt existed regarding the defendant's commission of the offense of attempted murder. Consistently, the jury also could have convicted defendant of Pat's murder on the basis of some of Ghazi's testimony as to the events in the bedroom. Contrary to the State's position, the jury was not required to accept all or none of Ghazi's testimony in reaching its verdicts. As such, a reasonable probability exists that but for counsel's failure to submit self-defense instructions to the jury, the result of the proceeding would have been different.

 In his petition for rehearing, defendant argues on the authority of *People v. Wright* (1986), 111 Ill. 2d 18, decided after our decision in the case at bar, that he was denied the effective assistance of counsel because his attorney failed to raise or tender instructions on the defense of voluntary intoxication. *Wright*, however, arose in a substantially different procedural context. There, the defendant was convicted of murder and armed violence, and filed both a notice of appeal and a post-conviction petition alleging the incompetence of his counsel. After an evidentiary hearing, the trial court granted the defendant's petition, finding that her counsel's failure to introduce evidence of the defendant's intoxication and drug ingestion based upon his misapprehension of the law, amounted to incompetence. In reaching this conclusion, the supreme court in *Wright* had before it the evidence introduced at the post-conviction hearing including the testimony of the defendant's attorney. The *Wright* court specifically observed that the attorney never considered that the act of the defendant, who admitted shooting the victim, arguably was reckless and thus might warrant a conviction for involuntary manslaughter and not murder. This error, the *Wright* court concluded, established that the attorney's representation did not meet the objective standard of reasonable competence.

In contrast to *Wright*, here the record contains no testimony from defendant's counsel regarding the voluntary intoxication defense. Defense counsel, after reviewing the record, may well have concluded that defendant's testimony denying involvement in the murder was his strongest defense and that assertion of the defense of voluntary intoxication as an alternative argument might diminish the effectiveness of his principal argument. Such a decision would be more in the nature of a trial tactic and would not constitute a misapprehension of the law. On the record before us, however, we are unable to determine the reasoning underlying the decision of defense counsel at trial. Unlike *Wright*, therefore, defendant has not developed a record for

this court which establishes that the attorney's representation fell below a reasonable level of competence.

*Wright* is also distinguishable in that there, unlike here, the record conclusively established that the results of the proceeding would have been different. The defendant in *Wright* was convicted after a bench trial, and the same judge ruled on the post-conviction petition. After hearing the testimony at the post-conviction hearing, the trial judge stated that this evidence, had it been introduced at trial, would have convinced him to find defendant guilty of involuntary manslaughter and not murder. Here, the evidence in the record is insufficient to establish the existence of a substantial likelihood that the outcome of this jury trial would have been different had the defense of voluntary intoxication been raised. Compare *People v. Weir* (1980), 111 Ill. 2d 334, 340 (where the court rejected an ineffective assistance of counsel claim because the defendant's conduct belied his contention that his intoxication negated the required mental state).

Another distinction between *Wright* and the case at bar is that in *Wright*, the evidence adduced at trial and at the post-conviction hearing established that the defendant's conduct was reckless. Here, the evidence would not have supported a finding of recklessness. Defendant's testimony was that he did not kill Pat; the State's evidence tended to prove that defendant murdered Pat. The evidence introduced on either theory would not have supported a finding of recklessness. As *Wright* is substantially different from the case at bar, we are unpersuaded by defendant's argument that *Wright* requires reversal of his murder conviction.

■■■ Defendant also asserts that this court misapprehended certain points in defendant's argument. Specifically, defendant contends that this court cannot fairly conclude that defendant was not prejudiced by his counsel's failure to raise the voluntary intoxication defense because the jury did not hear all of the relevant evidence regarding defendant's intoxication. In asserting a claim of attorney incompetence, however, the defendant bears the burden of establishing a reasonable probability that the results of the proceeding would have been different. Defendant has failed to explain what the additional evidence of intoxication would have been. We cannot conclude the prejudice prong of *Strickland* is satisfied on the basis of conjectural evidence. We therefore conclude that defendant has failed to sustain his burden demonstrating the incompetence of his trial counsel regarding the murder offense.

Accordingly, we deny both petitions for rehearing.